ATTORNEYS FOR APPELLANT
James H. Voyles
Jennifer M. Lukemeyer
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Michael G. Worden
Stephen Creason
Deputies Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

_____

No. 43S03-0506-CR-263

JASON PAUL DAVIDSON,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

_____

Appeal from the Kosciusko Circuit Court, No. 43C01-0205-MR-70
The Honorable Rex L. Reed, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 43A03-0312-CR-522

_____

**June 28, 2006**

**Shepard, Chief Justice.**

Appellant Jason Davidson offered expert testimony at trial to the effect that he was acting involuntarily when he shot and killed Samuel Creekmore. The trial court instructed the jury on the issue of voluntariness, but rejected Davidson's tendered instruction specifically defining

1

"voluntary" and including voluntariness as an element of the crime. We hold that the trial court adequately instructed the jury on the issue of voluntariness. Davidson's defense was actually one of involuntary intoxication.

## Facts and Procedural History

Davidson and Alicia Creekmore-Davidson married in 1995 and divorced in 2000, after Davidson discovered that Alicia was having an affair with Samuel Creekmore. Alicia and Creekmore married shortly thereafter. Despite the divorce and Alicia's remarriage, Davidson and Alicia still kept in contact and maintained a sexual relationship.

Davidson became depressed after the divorce and mentioned to friends and family that he wished Creekmore were dead. He also expressed an inclination to commit suicide. He began trying different anti-depressants and eventually settled on Zoloft.

On the night of the shooting, Davidson took one dose of Zoloft for his depression and an Ambien to induce sleep. He slept only briefly due to an unexpected visit from two friends around 9 p.m. They stopped by to recount their earlier run-in with Alicia, Creekmore, and Alicia's friend at a local restaurant. Alicia telephoned to tell her side of the story. During the friends' visit, the conversation turned to Creekmore, which is when Davidson told them that he could just shoot Creekmore and showed them a gun he had purchased.

After the visitors left, Davidson took a second Ambien and then drove about twenty minutes to Alicia's house in Warsaw, where Alicia and Creekmore had retired upstairs. He called Alicia on his cell phone, which irritated Creekmore, causing him to go downstairs. Alicia told Davidson he had irritated Creekmore, and Davidson asked what Creekmore was doing. Learning that Creekmore was downstairs, Davidson asked Alicia to hang on, then entered the house and shot Creekmore. Alicia ran downstairs to find Davidson with a gun in his hand and Creekmore lying on the floor. Davidson stated that he could not live like this and then left shortly before the police arrived.

The State charged Davidson with murder and a firearm enhancement, and a jury found him guilty of murder. The trial court found three mitigating factors: a minimal risk that Davidson would commit another crime, the absence of a criminal record, and Davidson's positive contribution to society prior to the incident. It declined to reduce Davidson's sentence, however, saying that this would depreciate the seriousness of the crime. The court found this aggravator "simply for the limited purpose of offsetting the mitigating factors" and sentenced Davidson to fifty-five years in prison, the presumptive term. (Tr. at 704-05); IND. CODE ANN. § 35-50-2-3 (West 2004).

Davidson argued on appeal that the trial court should have defined "voluntary" conduct and inserted voluntariness into the elements of murder. The Court of Appeals agreed and reversed. Davidson v. State, 825 N.E.2d 414, 419-20 (Ind. Ct. App. 2005) vacated. We granted transfer.

## I. Voluntariness Is Not an "Element"

Our statute defines murder as the knowing or intentional killing of another human being. IND. CODE ANN. § 35-42-1-1 (West 2005). The trial court adhered to this definition by instructing the jury as follows:

> To convict the Defendant, the State must have proved each of the following elements:
> The Defendant
> 1.      knowingly or intentionally
> 2.      killed
> 3.      Samuel Creekmore.

(Tr. at 638-39.) The trial court sustained the State's objection to Davidson's corresponding tendered instruction No. 3, which read basically the same, except "and voluntarily" was inserted as an additional element between "knowingly or intentionally" and "killed." (Tr. at 637.)

3

"The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." Overstreet v. State, 783 N.E.2d 1140, 1163 (Ind. 2003). A trial court erroneously refuses a tendered instruction if: 1) the instruction correctly states the law, 2) evidence supports the instruction, and 3) no other instructions cover the substance of the tendered instruction. Id. at 1164; Davis v. State, 265 Ind. 476, 355 N.E.2d 836 (1976).

Davidson observes that Indiana's Pattern Jury Instructions inserts the phrase "and voluntarily" into the elements of a crime when the evidence raises a voluntariness issue. INDIANA PATTERN JURY INSTRUCTIONS § 9.01 (3rd ed. 2005) (using theft as an example). The pattern instructions rely on Baird v. State, 604 N.E.2d 1170, 1176 (Ind. 1992), which declared that if the evidence raised voluntariness as an issue, "the [S]tate must prove the defendant acted voluntarily beyond a reasonable doubt." See also IND. CODE ANN. § 35-41-2-1(a)(West 2004) (requiring that a person must act voluntarily in order for criminal liability to attach).

Davidson did supply testimony from medical experts concerning the voluntariness of his conduct. They testified that a combination of Ambien and Zoloft can adversely affect a person's control over impulsive behavior, causing one to become uninhibited. (Tr. at 235-36, 243, 355-57.) They also testified that Davidson was unaware of any potential adverse effects. (Tr. at 236.) They opined that Davidson was in a disassociative state rendering his conduct involuntary. (Tr. at 391, 393, 476, 489-90.)

Davidson argues that an inclusion of "and voluntarily" in the elements of the offense would have ensured that the jury knew that the State must prove he acted voluntarily beyond a reasonable doubt, and that no other instruction guided the jury on the State's burden as regards this element. (Appellant's Br. at 15-16.)

The real problem with this contention is that the condition that underlay Davidson's defense is covered by our Code section on intoxication and not by the section on voluntariness.

The drafters of Indiana's voluntariness provision used section 2.01 of the Model Penal Code as the source. IND. CRIM. LAW STUDY COMM'N, IND. PENAL CODE PROPOSED FINAL DRAFT 11-12 (1974). The American Law Institute report on the provision indicates that its purpose is to exclude from voluntary conduct those mental impairments that are the product of an otherwise healthy mind. The illustrative examples are reflexes, convulsions, unconsciousness (for example, a driver who loses consciousness and runs over a pedestrian), somnambulism, hypnosis, and a residual category for movements not a product of the actor's effort (where the actor is moved by force). MODEL PENAL CODE § 2.01 cmts. 1 & 2 (Official Draft and Revised Comments 1985). Because the Model Penal Code's list of such conditions was not imported into our Code, we have recognized that certain conditions not included in the ALI model can be covered under the Indiana statute. See McClain v. State, 678 N.E.2d 104, 108 n.7 (Ind. 1997).

There is no indication in the Model Code that it was designed to cover garden-variety or even exotic claims about the use of drugs or alcohol. Indeed, the Model Code contains a separate section on intoxication as a defense. MODEL PENAL CODE § 2.08 (Official Draft and Revised Comments 1985). So it is with our Code. Indiana law provides that intoxication is a defense only if the defendant did not consent to the introduction of the substance into his body or if the defendant was unaware the substance might cause intoxication. IND. CODE ANN. § 35-41-3-5 (West 2004).

Conflating these two concepts would lead inexorably to a result in apparent conflict with legislative policy. The General Assembly has declared that intoxication is not a defense, with two narrow exceptions. IND. CODE ANN. §§ 35-41-2-5, -3-5 (West 2004).[1] If instead we treat intoxication as raising the question of voluntary conduct, the result would be that all intoxication would be a defense. All the available legislative history about the origins of these provisions is to the contrary.[2]

---

[1] One of these exceptions pertains to the sort of intoxication Davidson was arguing. IND. CODE ANN. § 35-41-3-5 (West 2004) (defendant did not know substance might cause intoxication). This might have supported an instruction about intoxication as a defense, though none was submitted, perhaps because the narrow involuntary intoxication defense, where the burden is on the defendant, was unattractive strategy compared to an attempt to make "voluntariness" an element, thereby placing the burden on the prosecution.

[2] Davidson's claimed error concerning rejection of his instruction defining voluntary thus becomes moot.

## II. Davidson's Sentence

The trial court found three mitigating circumstances, but balanced them out with one aggravating circumstance — the imposition of a reduced sentence would depreciate the seriousness of the crime — in arriving at the presumptive sentence of fifty-five years. Davidson contends that the court's finding of this aggravator violates Blakely v. Washington,[3] and alternatively, that the trial court was wrong to mention it because it was not really contemplating a sentence less than the presumptive.

Blakely does not prohibit a trial court from finding aggravating circumstances. What it does prohibit is a trial court finding an aggravating circumstance *and* enhancing a sentence beyond the statutory maximum. Id. at 301. See also Smylie v. State, 823 N.E.2d 679, 685 (Ind. 2005) (Indiana's sentencing system allowing judicial fact-finding and deviation from fixed term violates Sixth Amendment).[4] Counsel has lifted up one of the logical conundrums created by Blakely: if a trial judge cannot find an aggravator to support more than a presumptive sentence, how can it use such a factor to offset mitigators, leading to a presumptive sentence? As far as we can tell, the Blakely court's answer would be: because the Sixth Amendment is not violated when, through whatever judicial action, the defendant receives the presumptive sentence.

As for the legitimacy of the aggravator "[i]mposition of a reduced sentence . . . would depreciate the seriousness of the crime," it is an aggravating circumstance the trial court may consider in sentencing. IND. CODE ANN. § 35-38-1-7.1(b)(4)(West 2004).[5] This circumstance is properly considered only when the trial court is considering imposing a sentence below the presumptive term. Jones v. State, 780 N.E.2d 373, 380 (Ind. 2002). It is apparent from the

---

[3] 542 U.S. 296 (2004).

[4] Indiana's General Assembly amended the felony sentencing statutes in 2005, replacing the presumptive "fixed term" with an "advisory sentence." 2005 Ind. Acts 1600. This effectively changed the maximum sentence, for Blakely purposes, from the presumptive fixed term to the upper statutory limit. Thus, for example, the "Blakely" maximum sentence for murder changed from fifty-five years to sixty-five years.

Davidson's sentence certainly passes constitutional muster under the new regime, but since he was sentenced prior to 2005, we analyze his sentence under the former system.

[5] The Indiana General Assembly also amended this sentencing statute in 2005, making all aggravating and mitigating circumstances discretionary, in contrast to the previous system which required the trial court to at least consider some explicitly listed aggravating circumstances. 2006 Ind. Acts 3209.

record that the trial court did in fact consider a reduced sentenced, by virtue of its statement, "that for the Court to consider a reduced sentence would depreciate the value or depreciate the seriousness of the crime, so I find that aggravating factor." (Tr. at 704.)

The trial court did not err in sentencing Davidson.

## Conclusion

We affirm Davidson's conviction and sentence.

**Dickson, Sullivan, Boehm, and Rucker, JJ., concur.**