**FOR PUBLICATION**

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

FILED

Jan 19 2012, 9:35 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TOMMY D. ALFREY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 54A01-1104-CR-169 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM MONTGOMERY CIRCUIT COURT
The Honorable Harry A. Siamas, Judge
Cause Nos. 54C01-0803-FC-49, 54C01-1002-FB-19, 54C01-1008-FD-85

**January 19, 2012**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

Following a jury trial, Appellant-Defendant Tommy Alfrey appeals following his convictions, in Cause Number 54C01-1002-FB-19 ("Cause No. 19") for Class D felony Residential Entry,[1] Class D felony Theft,[2] and Class A misdemeanor Trespass;[3] his convictions in Cause Number 54C01-1008-FD-85 ("Cause No. 85") for Class D felony Escape,[4] and Class D felony Residential Entry;[5] and the revocation of his probation in Cause Number 54C01-0803-FC-49 ("Cause No. 49"). Upon appeal, Alfrey claims that the trial court's jury instructions regarding the defense of intoxication constituted fundamental error, and that there was insufficient evidence to support his convictions or his probation revocation. We affirm.

## FACTS AND PROCEDURAL HISTORY

Alfrey, who suffers from multiple health problems, has had prescriptions for Oxycontin and Oxycodone since approximately 1999. On June 3, 2009, Alfrey met with radiation oncologist Dr. Mary Rhees, regarding what was believed to be cancer in his pelvis. Dr. Rhees increased Alfrey's doses of Oxycontin and Oxycodone for purposes of pain management.

### Cause No. 49

On September 28, 2009, Alfrey was convicted, pursuant to a plea agreement, of Class D felony Attempted Acquisition of a Controlled Substance in Cause No. 49. The

---

[1] Ind. Code § 35-43-2-1.5 (2009).

[2] Ind. Code § 35-43-4-2 (2009).

[3] Ind. Code § 35-43-2-2 (2009).

[4] Ind. Code § 35-44-3-5 (2010).

[5] Ind. Code § 35-43-2-1.5

2

trial court sentenced him to serve eighteen months in the Department of Correction, all of it suspended to probation.

## Cause No. 19

At approximately 9:00 a.m. on February 2, 2010, Alfrey walked into Betty Munro's Crawfordsville store acting in an unusual manner. Munro, who knew Alfrey, claimed he was not acting like himself: he could hardly stand up; fell asleep at her counter; and did not make much sense when he spoke. Munro agreed to drive Alfrey to his daughter's house. After stopping at various places at Alfrey's request, Munro drove Alfrey to a home on East State Road 32 where his deceased parents had once lived.

Upon arriving at the home, Alfrey indicated that a truck in the driveway was his and stepped out of Munro's vehicle. Alfrey attempted to step into the truck. Shortly thereafter, authorities received reports that Alfrey had entered the home uninvited. Upon responding, Montgomery County Sheriff's Deputy David Johnson found Alfrey just outside the residence. Deputy Johnson drove Alfrey, who seemed a bit confused at the time, to his actual Crawfordsville residence, which Alfrey recognized.

At approximately 11:00 or 11:30 that morning, Donald Cobbe heard a loud crash in his Crawfordsville apartment. Upon investigating, Cobbe discovered Alfrey lying on the floor and saying that he lived there. Cobbe told Alfrey approximately three to four times that Alfrey did not live there. Alfrey stood up and walked into Cobbe's living room. Cobbe was able to talk Alfrey, who was not violent, into leaving his apartment after approximately fifteen to twenty minutes. At the time, Alfrey, who had slurred speech and seemed incoherent, was looking for his keys.

3

Upon leaving Cobbe's apartment, Alfrey walked through an adjacent alleyway to a maroon Chevrolet S-10 truck parked nearby. The truck belonged to Robert Woodall, who had not locked it that day. According to Cobbe, Alfrey opened the truck's doors and looked under the seats for approximately five to ten minutes. Alfrey subsequently left the truck with its doors open. Shortly thereafter, Cobbe left his apartment, locking his door as he left.

At approximately 2:00 p.m. that afternoon, Woodall discovered his truck with its doors open and three packs of Marlboro cigarettes missing from inside. Woodall, who knew Alfrey, had not given him permission to look inside his truck that day.

Shortly after 2:00 p.m., Cobbe returned to his apartment to find his front door had been kicked in. There was a footprint on the outside of the door, the door was open about an inch and a half, and the frame and door jamb were split, leaving splinters on the floor. Cobbe discovered his garbage can had been knocked over, and garbage was all over his floor. Cobbe's kitchen cabinets, freezer, and refrigerator were open. A package of vanilla pudding was missing from his refrigerator. Earlier that day, a neighbor had seen a man wearing the clothes Alfrey was described to be wearing forcing Cobbe's door open.

Crawfordsville Police Officer Amy Clark responded to the scene. While Officer Clark was speaking to Cobbe about the incident, Alfrey walked by. Cobbe identified Alfrey as the person who had been inside his apartment earlier that morning. Officer Clark detained Alfrey. A subsequent pat down yielded a package of pudding which was cold to the touch. Cobbe later identified the pudding as his.

4

On February 8, 2010, the State charged Alfrey with Class B felony burglary (Count I), two counts of Class D felony theft (Counts II and III),[6] Class A misdemeanor trespass (Count IV), and Class D felony residential entry (Count V).[7] The State also filed a petition to revoke or modify Alfrey's probation in Cause No. 49. On March 12, 2010, the trial court ordered Alfrey to home detention in Cause No. 49, with the condition that he leave his home only for specified reasons, including to obtain medical care, apply for benefits, or work.

Alfrey continued to seek medical care from Dr. Rhees through July 19, 2010. At one point he was taking four different types of pain medications, as well as Xanax for anxiety.

## Cause No. 85

At approximately 9:30 to 10:30 a.m. the morning of August 3, 2010, Alfrey's landlord observed him fixing a mower in the back of his truck. The landlord, who spoke with Alfrey briefly, did not observe anything unusual about Alfrey. At approximately 11:00 to 11:30 a.m. that day, Joyce Burchett was at her home in Crawfordsville when, upon walking into her kitchen, she observed Alfrey inside her home. Burchett did not hear a knock at her door, and she had not invited Alfrey to enter the home. Alfrey, who was wearing a home detention monitoring bracelet on his ankle, mumbled something about flowers. Burchett told him to leave, and Alfrey left the home.

---

[6] Alfrey was charged in Count II with theft of the pudding and in Count III with theft of the cigarettes.

[7] Ultimately, Count V was dismissed at trial.

5

Investigating officers found Alfrey at his apartment. When informed by officers that he had entered a home without permission, Alfrey turned and looked at Burchett's house. Alfrey claimed that his landlord had asked him to do some work at Burchett's home and that he entered her home out of confusion. Alfrey's landlord claimed he had not asked Alfrey to work at Burchett's home that morning. On August 4, 2010, the State charged Alfrey with Class D felony escape (Count I) and Class D felony residential entry (Count II).

**Cause Nos. 19 and 85**

During a consolidated trial in Cause Nos. 19 and 85, Alfrey testified that he knew he was taking the medications at issue and had done so voluntarily. Alfrey also testified that he knew, from conversations with his doctors and pharmacists, that the medications could make him impaired or intoxicated. At the close of evidence, the trial court submitted jury instructions, consistent with statutory language, indicating that intoxication was not a defense and could not alter mens rea unless it occurred (1) without consent or (2) without knowledge of intoxicating effect. The trial court rejected Alfrey's proffered instruction indicating that intoxication could be considered to negate specific intent.

The jury subsequently found Alfrey guilty, in Cause No. 19, of Class D felony residential entry, a lesser included offense of the burglary alleged in Count I; Class D

6

felony theft in Count II;[8] and Class A misdemeanor trespass in Count IV. The jury found Alfrey guilty of both Counts I and II as charged in Cause No. 85.

**Cause Nos. 19, 49, and 85**

On April 12, 2011, the trial court, which had entered judgment of conviction pursuant to the guilty verdicts, amended its judgment to reflect that Alfrey had violated the terms of his probation in Cause No. 49 by committing the offenses in Cause Nos. 19 and 85. The trial court revoked Alfrey's probation and ordered that he serve the balance of his eighteen-month sentence in the Department of Correction, which by that point amounted to time served.

The trial court sentenced Alfrey, in Cause No. 19, to concurrent executed sentences of eighteen months in the Department of Correction on Count I; eighteen months on Count II; and one year in jail on Count IV.[9] In Cause No. 85, the trial court sentenced Alfrey to two concurrent sentences of eighteen months in the Department of Correction, with six months executed and one year suspended to probation. The trial court further ordered that the aggregate sentences in Cause Nos. 19 and 85 run consecutive to one another and consecutive to the sentence imposed following revocation of probation in Cause No. 49. This appeal follows.

---

[8] Alfrey was found guilty of theft of the pudding (Count II), and he was acquitted of theft of the cigarettes (Count III).

[9] In its judgment of conviction, it appears that the trial court mistakenly deemed Count IV "theft" rather than "trespass" as charged.

7

## DISCUSSION AND DECISION

### I.    Jury Instructions

Upon appeal, Alfrey first claims that the trial court's jury instruction regarding the defense of intoxication constituted fundamental error.  Alfrey argues that the defense of intoxication "has its roots in drunkenness" and thus does not apply to prescription medications such as his, which were taken for medical purposes.  Appellant's Br. p. 8. Alfrey does not offer authority for his position or dispute that the jury instructions mirrored Indiana law.

"'The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict.'"  *Davidson v. State*, 849 N.E.2d 591, 593 (Ind. 2006) (quoting *Overstreet v. State*, 783 N.E.2d 1140, 1163 (Ind. 2003)).  Instruction of the jury is generally within the discretion of the trial court and is reviewed only for an abuse of that discretion.  *Overstreet*, 783 N.E.2d at 1163-64.  A trial court erroneously refuses a tendered instruction if:  (1) the instruction correctly states the law; (2) evidence supports the instruction, and (3) no other instructions cover the substance of the tendered instruction.  *Davidson*, 849 N.E.2d at 593.  In assessing claims of fundamental error, we look at the jury instructions as a whole to determine whether an error exists which constitutes a clearly blatant violation of basic and elementary principles, where the harm or potential for harm is substantial, and where the resulting error denies the defendant fundamental due process.  *See Munford v. State*, 923 N.E.2d 11, 13-14 (Ind. Ct. App. 2010).

Indiana Code section 35-41-2-5 (2009) prohibits, in general terms, the use of intoxication as a defense: "Intoxication is not a defense in a prosecution for an offense and may not be taken into consideration in determining the existence of a mental state that is an element of the offense unless the defendant meets the requirements of IC 35-41-3-5."

Indiana Code section 35-41-3-5 establishes the only circumstances under which intoxication may be used as a defense: "It is a defense that the person who engaged in the prohibited conduct did so while he was intoxicated, only if the intoxication resulted from the introduction of a substance into his body: (1) without his consent; or (2) when he did not know that the substance might cause intoxication."

Instruction 7 of the trial court's jury instructions informed the jury, consistent with section 35-41-2-5, as follows: "Voluntary intoxication is not a defense to a charge of burglary, theft, trespass, residential entry, or escape. You may not take voluntary intoxication into consideration in determining whether the Defendant acted intentionally or knowingly as alleged in the informations." Appellant's App. p. 183.

Instruction 8 instructed the jury, consistent with section 35-41-3-5, about the defense of involuntary intoxication:

> It is a defense that the person who engaged in the prohibited conduct did so while he was intoxicated, only if the intoxication resulted from the introduction of a substance into his body:
>     1. Without his consent; or
>     2. When he did not know that the substance might cause intoxication.

Involuntary intoxication is a defense to the crime charged if the intoxication rises to the level that the Defendant was unable to appreciate the wrongfulness of the conduct at the time of the offense.

Appellant's App. p. 184.

Alfrey does not dispute that the trial court's instructions were consistent with the law. Alfrey instead argues that they are an incomplete statement of the law. In Alfrey's view, the jury instructions and statutes they follow do not contemplate cases such as his, where an individual is taking prescription drugs for lawful, therapeutic, non-recreational purposes. Even assuming that Alfrey's use of the drugs at issue was entirely as prescribed, we cannot agree. As the *Davidson* court observed, the Indiana General Assembly has declared that intoxication is not a defense, with only the two narrow exceptions outlined in section 35-41-3-5. *Davidson*, 849 N.E.2d at 594. Alfrey would have us carve out a third exception. We will not do so in the face of clear legislative and judicial authority to the contrary.

To the extent Alfrey suggests that such statutory construction criminalizes wholly involuntary conduct on his part, the *Davidson* court has clearly rejected the conflation of voluntariness and intoxication. *Id.* at 594 ("Conflating these two concepts would lead inexorably to a result in apparent conflict with legislative policy."). In any event, Alfrey, who testified that he took the medications consensually and with full awareness of their intoxicating effect, concedes that he took them voluntarily. Intoxication, if voluntary, supplies the general requirement of a voluntary act. *Sanchez v. State*, 749 N.E.2d 509, 517 (Ind. 2001). As for Alfrey's contention that his federal due process rights have been violated, the United States Supreme Court has rejected this claim. *See Sanchez*, 749

10

N.E.2d at 512 (citing *Montana v. Egelhoff*, 518 U.S. 37, 56 (1996) for proposition that a state may prohibit a criminal defendant from offering evidence of voluntary intoxication to negate the requisite mens rea without violating the Due Process Clause of the Fourteenth Amendment). We find no error, fundamental or otherwise.

## II. Sufficiency of the Evidence

Alfrey additionally challenges the sufficiency of the evidence to support his convictions in light of what he claims is his lacking mens rea due to his prescription medication intoxication. We have already concluded, based upon the rule announced in Indiana Code section 35-41-2-5, that intoxication may not erase mens rea. Alfrey does not claim that the narrow exceptions to this rule under section 35-41-3-5 apply. In any event, Alfrey's testimony that he consensually took medications he knew could cause intoxication establishes sufficient evidence to negate the applicability of these narrow exceptions. We must conclude that Alfrey's sufficiency challenges lack merit.

## III. Probation Revocation

Alfrey finally challenges the revocation of his probation. The petition to revoke probation in Cause No. 49 alleged, as one of its grounds, the charges in Cause No. 19. Having rejected Alfrey's challenge to his convictions in Cause No. 19, we similarly reject his challenge to his probation revocation on the basis that those charges or convictions are somehow faulty.

The judgment of the trial court is affirmed.

KIRSCH, J., and BARNES, J., concur.

11