## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 17 2015, 8:19 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Nicole A. Zelin<br>Pritzke & Davis, LLP<br>Greenfield, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>George P. Sherman<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kevin J. Mamon,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff,* | July 17, 2015<br><br>Court of Appeals Case No.<br>30A05-1408-CR-372<br><br>Appeal from the Hancock Circuit Court<br>The Honorable Richard D. Culver, Judge<br>Case No. 30C01-1302-FD-271 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Kevin Mamon was convicted of battery resulting in bodily injury, a Class D felony, and sentenced to three years in the Indiana Department of Correction ("DOC"). Mamon appeals his conviction, raising four issues for our review: 1) whether the trial court erred in denying his Criminal Rule 4(B) motion for discharge; 2) whether he was denied his right to a speedy trial; 3) whether the trial court erred in instructing the jury; and 4) whether there was sufficient evidence to support his conviction.

[2] We conclude the trial court did not err in denying Mamon's motion for discharge, and Mamon's constitutional right to a speedy trial was not violated. We further conclude the trial court did not err in refusing Mamon's proposed jury instructions and that the State rebutted his claim of self-defense. We therefore affirm Mamon's conviction.

# Facts and Procedural History

[3] On January 16, 2013, Mamon was sentenced in Hancock Superior Court 1 to six years in the DOC for resisting law enforcement and an habitual offender finding ("Cause 524"). At the time, he also had a charge pending in Marion County. On February 27, 2013, Mamon was found guilty by a jury in Hancock Circuit Court of battery by bodily waste ("Cause 1791"). Following the trial, he was held at the Hancock County Jail pending transfer back to Marion County on the same date. In preparation for the transfer, Sergeant Keith Oliver told

Mamon to gather his personal belongings and jail-issued items. Sergeant Oliver escorted Mamon to the jail receiving room to be booked out. As part of the booking out process, an inmate's belongings are searched "to make sure there is nothing in there that he cannot have that might belong to the facility." Transcript at 76. Sergeant Oliver found what he believed to be pages torn from the jail's law library books and set them aside as items that needed to remain at the facility. Mamon objected, stating that the papers were his own. He became verbally abusive to Sergeant Oliver and tried to move around him. Sergeant Oliver put his arm up to block Mamon and told him to have a seat. Mamon responded by telling Sergeant Oliver to "get your hands off me bitch," State's Exhibit 3, raising his arm to push Sergeant Oliver's arm away from him, and then punching Sergeant Oliver in the mouth. Other officers in the area handcuffed Mamon, and he was placed in a restraint chair until he was transported out of the jail approximately an hour later. Sergeant Oliver suffered a cut to his lip and bruising to his mouth.

[4] As a result, on February 28, 2013, the State filed the current charge against Mamon in Hancock Circuit Court for battery, a Class D felony, and the trial court issued a warrant for his arrest. On May 1, 2013, the State filed a request for the trial court to set an initial hearing for May 3 and order Mamon to appear. The request indicated that Mamon had contacted the prosecutor's office on April 26, 2013 and stated that he would appear in court on May 3 for an initial hearing should the court order him to do so, gave an address to which the order should be sent, and indicated he would also check the online

Chronological Case Summary ("CCS") for an order. The trial court issued an order setting an initial hearing for May 3 and ordering Mamon to appear. On May 3, 2013, the State appeared for the scheduled hearing but Mamon failed to appear.

[5] It appears that on May 28, 2013, Mamon was sentenced in Marion County to one year in the DOC for the charges that had been pending against him there. Mamon then appeared before the court in this case on June 3, 2013, at which time the trial court noted that he was in the custody of DOC. The trial court also noted that he was in court on two matters: he had not yet been sentenced in Cause 1791, and he had not yet had an initial hearing in the instant case.[1] Mamon indicated he "asked for a fast and speedy trial on that – on that particular case." Tr. at 6. The trial court appointed counsel at Mamon's request and set a pre-trial conference and hearing on his motion for speedy trial for July 18, 2013 – at which time he was also to be sentenced in Cause 1791. The trial court wished to hear legal arguments from counsel about the speedy trial request because although Mamon was in custody, "if you're going to be in custody someplace else anyway this is [sic] file is not what's keeping you from being free . . . . And so you may not have a right to be tried within 70 days

---

[1] Apparently, the delay is attributable to Mamon having been inadvertently released from the Marion County Jail at some point after February 28, 2013. *See* Tr. at 4 (trial court noting at the start of the June 3, 2013 hearing that "temporarily you were gone because apparently Marion County released you . . . ."); *see also id.* at 13 (trial court noting at hearing on speedy trial request that "for the record I don't think there's any belief that you escaped from the Marion County Jail, they accidentally released you . . . or somehow you were free.").

. . . ." Transcript at 8.  The trial court did not, as it usually would, set a second pre-trial conference, trial status, or trial date pending the outcome of the hearing.

[6] The July 18, 2013 pre-trial conference and hearing was continued.  The CCS indicates it was continued "by request" but does not indicate at whose request.  Appellant's Appendix at 3.  When the parties appeared on August 22, 2013 for the pre-trial conference, Mamon's counsel indicated it had been continued "because [Mamon] wasn't . . . [n]obody knew where he was at."  Tr. at 15.[2]  Counsel also indicated that Mamon wished to have him (or someone else) serve only as advisory counsel.  Although counsel interjected occasionally during the hearing, Mamon largely spoke for himself.  Mamon was sentenced in Cause 1791 and then requested that this case be dismissed pursuant to Indiana Criminal Rule 4(B).  The trial court denied his motion to dismiss because "from the time the charges were filed here you were never realistically held in this jail so that your liberty was taken away based upon the pending charge here.  You were either out during this time that you were inadvertently released or you were serving time for another Judge . . . ."  *Id.* at 14.  The trial court also denied Mamon's request to certify that decision for interlocutory appeal.  The trial court then stated that it "authorizes you to be released on your own

---

[2] The opinion in Mamon's appeal from Cause 1791, for which he was scheduled to be sentenced on July 18, 2013, indicates that the hearing on that date was "subsequently moved to August 22, 2013, based on Mamon's unavailability."  *Mamon v. State*, No. 30A05-1309-CR-440, slip op. at 5 (Ind. Ct. App. Mar. 31, 2014), *trans. denied*.

recognizance under this cause," tr. at 17, and scheduled a jury trial for January 14, 2014.

[7] On August 23, 2013, Mamon filed a written Motion to Dismiss for Violation of Ind. Crim. Rule 4(B)(1). The trial court denied the motion on September 3, 2013, finding that Mamon "has been released on his own recognizance under this cause number and is currently serving time at the Department of Corrections [sic] on unrelated matters." Appellant's App. at 24. Mamon then filed a request for writ of mandamus and prohibition with the Indiana Supreme Court seeking relief against the trial court for its failure to discharge him. On December 20, 2013, the Supreme Court issued the following order:

> The key dispute between Mr. Mamon and the State has been whether he was held on this charge between June 3 and August 22, 2013, a period during which he was incarcerated and serving a sentence for a prior offense. The record of proceedings is unclear with regard to the disputed fact, so Mr. Mamon has not established that the trial court has a clear, absolute duty to dismiss the charge. Appeal is the normal avenue for challenging the rulings of a trial court. The appellate courts of Indiana routinely address speedy trial issues in appeals after a conviction and sentence, and Mr. Mamon does not demonstrate that any remedy by such an appeal would be wholly inadequate. Accordingly, the court denies the request for writ. To clarify, this denial is without prejudice to Mr. Mamon seeking review of his C.R. 4(B)(1) claim should he appeal in the future.

*Id.* at 165.

[8] The January 17, 2014 trial date was vacated due to the unavailability of the judge, and the cause reset for February 11, 2014. On January 8, 2014, Mamon filed a motion for certification of the trial court's September 3, 2013 order

denying his written motion to dismiss and for stay of proceedings pending appeal. Apparently unaware of the December 20, 2013 order issued by the Indiana Supreme Court, the trial court granted the motion for stay of proceedings and vacated the February 11, 2014 trial date "pending a decision from the Supreme Court of Indiana" in Mamon's request for writ. Appellant's App. at 55. The trial court did not rule on the motion to certify its order for interlocutory appeal.

[9] It is unclear when the trial court became aware of the resolution of Mamon's request for writ, but in April of 2014, the trial court scheduled this case for jury trial on June 17, 2014 and again appointed counsel to represent Mamon. The day before trial, Mamon filed a notice of intent to raise defense of self or property and tendered proposed jury instructions regarding self-defense. The trial court declined to give the proposed jury instructions, explaining:

> With regard to the issue of property I don't think the evidence supported granting the instruction because even assuming that it was Mr. Mamon's property . . . the law doesn't justify the use of physical force under those circumstances . . . . And with regard to the issue of defending himself from physical attack, there is no evidence in the record that would support a reasonable person to conclude that it was necessary for Mr. Mamon to resort to physical violence to defend his person.

Tr. at 157-58. The jury found Mamon guilty of battery. He was sentenced to three years at the DOC. He now appeals his conviction.

# Discussion and Decision

## I. Speedy Trial

### A. Criminal Rule 4(B)

[10] Mamon first alleges that the trial court erred in denying his Criminal Rule 4(B) motion for discharge. "The broad goal of Indiana's Criminal Rule 4 is to provide functionality to a criminal defendant's fundamental and constitutionally protected right to a speedy trial." *Austin v. State*, 997 N.E.2d 1027, 1037 (Ind. 2014). Nonetheless, our review of Criminal Rule 4 challenges is separate and distinct from our review of claimed constitutional violations of the right to a speedy trial. *Id.* at 1037 n.7.

[11] In reviewing a ruling on a Criminal Rule 4 challenge, we apply a de novo standard of review to questions of law applied to undisputed facts, and a clearly erroneous standard of review to the trial court's factual findings on disputed facts. *Id.* at 1039-40. "Clear error is that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* at 1040 (quotation omitted). In reviewing for clear error, we neither reweigh the evidence nor judge the credibility of witnesses; instead we consider only the probative evidence and reasonable inferences supporting the judgment. *Id.*

[12] Criminal Rule 4(B) provides, in relevant part:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the

delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.

The purpose of Criminal Rule 4(B) is to prevent a defendant from being detained in jail for more than seventy days after requesting a speedy trial. *Fletcher v. State*, 959 N.E.2d 922, 925 (Ind. Ct. App. 2012), *trans. denied*. "[T]he State has an affirmative duty to try an incarcerated defendant who requests a speedy trial within seventy days." *Upshaw v. State*, 934 N.E.2d 178, 182 (Ind. Ct. App. 2010) (quotation omitted), *trans. denied*. However, "[a] defendant must maintain a position reasonably consistent with his request for a speedy trial and must object, at his earliest opportunity, to a trial setting that is beyond the seventy-day time period." *Wilkins v. State*, 901 N.E.2d 535, 537 (Ind. Ct. App. 2009) (quotation omitted), *trans. denied*. If a timely objection is not made, the defendant has abandoned his request for an early trial. *Id.* "The defendant's obligation to object to a trial date that falls outside the Criminal Rule 4(B) time frame reflects the purpose of the rule—to ensure early trials, not to allow defendants to manipulate the means designed for their protection and permit them to escape trials." *Id.* (quotation omitted).

[13] Mamon requested a speedy trial on June 3, 2013, at his initial hearing. The trial court was unsure of the implications of Mamon's other criminal cases on his request, and therefore set a hearing to allow counsel time to research and then make legal argument regarding the parameters of Mamon's request. Seventy days from June 3 fell on August 12, 2013. The trial court set the hearing for July 18, 2013. However close that date was to the deadline, it

would theoretically still have been possible to try Mamon within the seventy days if the trial court had determined that was necessary. But Mamon failed to appear for that hearing. Therefore, the delay from July 18, 2013 to August 22, 2013 was caused by his act and does not count against the seventy-day deadline, extending it by over thirty days. *See* Crim. R. 4(B). On August 22, 2013, the trial court released Mamon on his own recognizance and he was no longer held in jail on this charge. That he was still subject to incarceration thereafter due to his other criminal convictions was, again, caused by his act. If he had no other pending cases, he would have been released from incarceration as of August 22, 2013 on this charge. "[F]or Rule 4(B) to apply, the defendant must be incarcerated on the charge for which he seeks a speedy trial, and as long as that requirement is met, the availability of Rule 4(B) is not affected if the defendant is also incarcerated on other grounds." *Cundiff v. State*, 967 N.E.2d 1026, 1031 (Ind. 2012). Because the trial court released Mamon on this case before the seventy-day period expired, the purpose of Rule 4(B)—to keep a defendant from being held in jail for more than seventy days on a charge—was satisfied. *See Fletcher*, 959 N.E.2d at 925.

[14] Further, when the trial court reset the July 18, 2013 pre-trial conference to August 22, 2013, a date Mamon claims was past the seventy day deadline, he did not object. He therefore abandoned his request for a speedy trial. *See Sumner v. State*, 453 N.E.2d 203, 206-07 (Ind. 1983) (holding defendant acquiesced in delay when he failed to object to scheduling of pre-trial conference for a date after the expiration of the seventy-day period).

[15]    For these reasons, the trial court did not clearly err by denying Mamon's motion to dismiss the pending charges based on Criminal Rule 4(B).

## B. Constitutional Right to a Speedy Trial

[16]    Mamon also claims the trial court violated his federal and state constitutional rights to a speedy trial by not trying him until approximately sixteen months after he was charged and a year after he requested a speedy trial. The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." Article 1, section 12 of the Indiana Constitution provides that "[j]ustice shall be administered . . . speedily, and without delay." The federal speedy trial analysis was announced in *Barker v. Wingo*, 407 U.S. 514 (1972). Indiana applies that analysis to claims made under the Indiana Constitution as well. *Logan v. State*, 16 N.E.3d 953, 961 (Ind. 2014). In *Barker*, the United States Supreme Court identified the following factors to be balanced in determining whether the defendant has been deprived of his constitutional right to a speedy trial: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of the right; and 4) the prejudice to the defendant. 407 U.S. at 530.

[17]    Initially, Mamon must show that his trial was not prompt. To trigger a speedy trial analysis, he must allege that the time between the charge and the trial "crossed the threshold dividing ordinary from 'presumptively prejudicial' delay . . . ." *Doggett v. U.S.*, 505 U.S. 647, 651-52 (1992). "[W]hen length of delay is

considered as a factor in the *Barker* analysis, this court determines 'the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.'" *Davis v. State*, 819 N.E.2d 91, 96 (Ind. Ct. App. 2004) (citing *Doggett*, 505 U.S. at 652), *trans. denied*. Here, the length of time between Mamon being formally accused and when he was tried was sixteen months, but some of that time was due to Mamon's own conduct. He absented himself from the court; asked for an attorney, then asserted his right to represent himself, then ultimately requested appointed counsel again; and filed several motions which, although his right to do so, necessitated delaying the trial. The trial court's schedule also caused some delay, but the State was responsible for no apparent delay in these proceedings. With regard to both the length of the delay and the reasons for it, we find that most of the delay was attributable to Mamon.

[18] As to Mamon's assertion of his right to speedy trial, he did assert that right when first brought before the court. Thereafter, however, he failed to appear at a pre-trial conference scheduled within the seventy days and subsequently failed to object when the pre-trial conference was re-scheduled outside the seventy days in order to preserve his speedy trial request. It is clear Mamon was interested only in *no* trial, rather than a *speedy* trial.

[19] With regard to prejudice resulting from the delay, we have recognized that there are three types of prejudice: "oppressive incarceration; constitutionally cognizable anxiety resulting from excessive delay; and impairment of the defendant's rights." *Allen v. State*, 686 N.E.2d 760, 783 (Ind. 1997), *cert. denied*

525 U.S. 1073 (1999). Mamon concedes the delay "did not cause oppressive pretrial incarceration as [he] was otherwise incarcerated on another sentence," but alleges "personal prejudice" because "the delays sought by the State were almost seemingly to maximize [his] anxiety . . . ." Brief of Appellant at 11. As noted above, the delays were not the fault of the State, and there is no indication that Mamon suffered any anxiety greater than that experienced by any other individual awaiting trial, especially as he was incarcerated on other charges.

[20] Balancing the *Barker* factors, we find Mamon was responsible for much of the delay, did not actively preserve his speedy trial rights, and has not shown that his rights were prejudiced as a result of the delay. Instead, this seems to be a classic case of a defendant "manipulating the means designed for his protection." *See Wilkins*, 901 N.E.2d at 537. Mamon's federal and state constitutional right to a speedy trial was not violated.

## II. Self-Defense

### A. Jury Instructions

[21] Mamon next contends the trial court erred in denying his proposed jury instructions regarding self-defense. The decision to give or deny a tendered jury instruction is largely left to the sound discretion of the trial court, and we review only for an abuse of that discretion. *Santiago v. State*, 985 N.E.2d 760, 761 (Ind. Ct. App. 2013), *trans. denied*. A trial court abuses its discretion by refusing to give a proposed instruction when the instruction correctly states the law, is

supported by the evidence, and is not covered in substance by other instructions. *Alfrey v. State*, 960 N.E.2d 229, 232 (Ind. Ct. App. 2012), *trans. denied*. We consider jury instructions as a whole and will not reverse the trial court unless the instructions as a whole mislead the jury as to the law in the case. *Santiago*, 985 N.E.2d at 761 (quotation omitted).

[22]    Mamon offered the following proposed jury instructions:

> A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force.
>
> A person is justified in using reasonable force against a public servant if the person reasonably believes the force is necessary to:
> (1) protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force;
> (2) prevent or terminate the public servant's unlawful entry of or attac[k] on the person's dwelling, c[u]rtilage, or occupied motor vehicle; or
> (3) prevent or terminate the public servant's unlawful trespass on or criminal interference with property lawfully in the person's possession, lawfully in possession of a member of the person's immediate family, or belonging to a person whose property the person has authority to protect.
>
> A law enforcement officer is a public officer.
>
> If you find Kevin J. Mamon to have used justified and reasonable force against Keith Oliver, you must find Kevin J. Mamon not guilty of Battery on a law enforcement officer, a Class "D" felony.

Appellant's App. at 78-79.

The trial court instructed the jury as follows:

> For purposes of this section law enforcement officer includes a correctional professional. To convict the defendant the State must have proved each of the following elements: The defendant, Kevin J.

Mamon, knowingly touched Sergeant Keith Oliver a law enforcement officer who was engaged in the execution of his official duties resulting in bodily injury . . . to a law enforcement officer. If the State failed to prove each of these elements beyond a reasonable doubt you should find the defendant not guilty. If the State did prove each of these elements beyond a reasonable doubt you should . . . find the defendant guilty of battery. A person is justified in using reasonable force against a public servant if the person reasonably believes that force is necessary to protect the person or third person from what the person reasonably believes to be the imminent use of unlawful force. A law enforcement officer is a public servant.

Tr. at 181.

[23] Despite the trial court declining to give Mamon's proposed instructions because they were not supported by the evidence, the trial court nonetheless instructed the jury on self-defense. The only part of Mamon's proposed instructions that is not covered in some way by the trial court's instructions concerns the defense of property. As the trial court noted when declining to give the instruction, "I don't think the evidence supported granting the instruction because even assuming that it was Mr. Mamon's property . . . the law doesn't justify the use of physical force under those circumstances." Tr. at 157. We agree with that assessment. Moreover, Mamon testified that when he tried to move around Sergeant Oliver, Sergeant Oliver grabbed his wrist and twisted it, which is what prompted him to strike Sergeant Oliver. Even if Mamon could be justified in the use of force to protect the property Sergeant Oliver was setting aside to remain at the jail, there is no evidence that is why Mamon used force.

[24] There was no evidence to support the giving of Mamon's proposed instructions and the substance of the proposed instructions was nevertheless covered by the

trial court's instructions when considered as a whole. The trial court did not abuse its discretion by refusing to give Mamon's proposed instructions.

## B. Sufficiency of the Evidence

[25] Finally, Mamon contends the evidence is insufficient to support his conviction because the State did not rebut his claim of self-defense. The standard of review to such a challenge is the same as the standard of review for any sufficiency of the evidence claim: we neither reweigh the evidence nor judge the credibility of the witnesses and if there is sufficient evidence of probative value to support the verdict, the verdict will not be disturbed. *McCullough v. State*, 985 N.E.2d 1135, 1138-39 (Ind. Ct. App. 2013), *trans. denied*. "If a defendant is convicted despite his or her claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt." *Weedman v. State*, 21 N.E.3d 873, 892 (Ind. Ct. App. 2014), *trans. denied*.

[26] "A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force." Ind. Code § 35-41-3-2(c). A valid claim of self-defense is a legal justification for an otherwise criminal act. *Coleman v. State*, 946 N.E.2d 1160, 1165 (Ind. 2011). "However, the force used must be proportionate to the requirements of the situation." *Weedman*, 21 N.E.3d at 892 (quotation omitted). In order to prevail on a claim of self-defense, a defendant must show that he was in a place where he had a right to

be, that he acted without fault, and that he had a reasonable fear of death or great bodily harm. *Coleman*, 946 N.E.2d at 1165. When a claim of self-defense is raised and finds support in the evidence, the State then has the burden of negating at least one of the elements. *Cole v. State*, 28 N.E.3d 1126, 1137 (Ind. Ct. App. 2015).

[27] Mamon testified that he punched Sergeant Oliver because Sergeant Oliver first grabbed and twisted his wrist. However, the evidence presented to the jury in the form of Sergeant Oliver's testimony and video of the incident does not support Mamon's claim of self-defense. From the time Mamon was brought to the receiving room at the jail, he was agitated and directing inappropriate language toward Sergeant Oliver. Sergeant Oliver, though continuing to set aside some of what Mamon claimed was his personal property, was calm and nonresponsive to Mamon's belligerent behavior. The video does not clearly show that Sergeant Oliver grabbed Mamon's wrist. Even if Sergeant Oliver did grab Mamon's wrist, it would only have been in response to Mamon's conduct, and as a jail officer, he has an obligation and a right to control inmates within the jail by reasonable means. Moreover, a punch to the face with a closed fist is an entirely disproportionate response to Sergeant Oliver's reasonable attempts to settle Mamon down. The State's evidence rebuts Mamon's claim in that it is clear Mamon was not acting without fault and did not respond proportionately to the situation.

# Conclusion

Neither Mamon's Criminal Rule 4(B) nor his constitutional right to a speedy trial were violated under the circumstances of this case. The trial court did not abuse its discretion in instructing the jury, and the State presented sufficient evidence to rebut Mamon's claim of self-defense. Accordingly, Mamon's conviction of battery is affirmed.

Affirmed.

May, J., and Mathias, J., concur.