**Kim E. SANDERS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 382 S 75.**

Supreme Court of Indiana.

Aug. 1, 1984.

Susan K. Carpenter, Public Defender, M. E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Kim E. Sanders was convicted by a jury in the Tippecanoe Superior Court of class B felony robbery, Ind.Code § 35-42-5-1 (Burns Supp.1984). The trial court sentenced him to seventeen years imprisonment. He now directly appeals and raises the following four issues:

1. rulings of the trial court regarding Appellant's involuntariness defense;

2. refusal to give Appellant's tendered instruction V;

3. refusal to give Appellant's tendered instruction I; and

4. alleged prosecutorial misconduct during final argument.

At approximately 11:00 p.m. on March 3, 1981, a robbery occurred at the Tippecanoe Street Arth Drugstore in Lafayette, Indiana. The night delivery man, Mr. Donald Paul Jordan, drove to said drugstore in his delivery van, parked at the back door and prepared to unload the van when he was approached by a masked man who ordered him to enter the building. Jordan did not see a gun in the hands of the masked man but heard two clicks which sounded like the activation of the working parts of a gun. He had been in the service and was familiar with the sounds made by guns when activated. Jordan was carrying a portable silent alarm on his belt and triggered it before the robber directed him to enter a nearby room and lie down. While lying on the floor, Jordan could hear the sounds of someone "rummaging around." At no time did he see more than one robber. After several minutes, the Lafayette police arrived in response to Jordan's alarm and entered the building announcing who they were. The police found Appellant wearing a ski mask, carrying a knife and holding a

plastic garbage bag containing pills and capsules. When confronted by the police, Appellant rhetorically asked how they got there so fast before saying that it did not matter since he would get thirty years for the crime anyway. At the police station, Appellant volunteered:

"Aw .... I should have checked that guy's belt. Come to think of it he did have a pager hanging on the belt. Aw, well, can't worry about my own stupid mistake now, you've got me."

Appellant later gave a written statement to the police in which he admitted to having committed the robbery while armed but did not mention the presence or participation of any other person. When Appellant told the police he had been armed, they called the druggist and asked to be readmitted to the store so that they could check for Appellant's gun. They went to the room where Appellant was apprehended and looked under a chair and table and found the gun lying there.

At trial, Appellant testified that Danny Smith ordered him to commit the robbery and that he complied because he was afraid of Smith. Appellant's story was that Danny Smith stayed out of sight while holding a gun on him to force him to commit the robbery. Appellant testified that he never had a gun but that Smith had one. He explained that Smith tossed his gun down and left before the police could apprehend him. Neither the victim nor the police ever saw any person at the robbery scene other than Appellant and neither were ever told by Appellant until just prior to trial that Appellant was forced by Smith to commit the robbery.

I

Appellant first claims that the trial court erred in its ruling on Appellant's involuntariness defense. He specifically claims that the trial court prejudiced him when the trial court changed its ruling on the application of Ind.Code § 35–41–2–1 (Burns Supp.1984) to his case. During his opening statements to the jury, Appellant's trial counsel explained that Appellant would show that he was forced to commit this crime by Danny Smith who held a gun on him. The State objected claiming that the defense of duress was not available to one charged with committing an offense against the person. Appellant countered by contending that he was not raising a duress defense pursuant to Ind.Code § 35–41–3–8 (Burns Supp.1984) but that he was raising a defense of involuntariness pursuant to Ind.Code § 35–41–2–1. Appellant further claimed that there are two separate defenses available to those forced to commit criminal acts against their will, one being that the act was not voluntary (§ 35–41–2–1) and the other being that the actor was under duress (§ 35–41–3–8). Of course Appellant could not claim a duress defense pursuant to Ind.Code § 35–41–3–8 because that statute expressly excluded the crime for which Appellant was then being tried. Ind.Code § 35–41–3–8(b)(2) (Burns 1979). The trial court at that point overruled the State's objection and permitted Appellant to present to the jury his proposed involuntariness defense. Specifically, Appellant was permitted to testify that he was forced to commit the robbery by Smith. He also was allowed to bring forth other defense witnesses who testified that Smith was a dangerous person and capable of forcing someone to commit a crime. Appellant's brother even testified that Appellant was with Smith several hours before this robbery. After several of the State's witnesses testified, however, the trial judge advised Appellant's trial counsel that he was changing his ruling on Appellant's involuntariness defense but would permit Appellant the opportunity to make any objections or offers to prove deemed necessary. Appellant now claims that the trial court was incorrect in its ruling on his involuntariness defense and that the trial court put him in great peril by changing its ruling during the trial thereby stripping him of his primary defense.

■■■■■ There are general rules of statutory construction which are used as guidelines to determine the intention and meaning of legislative enactments. These rules

were well set out by the Court of Appeals in *Indiana Alcoholic Beverage Commission v. Osco Drug, Inc.*, (1982) Ind.App., 431 N.E.2d 823, 833. We will not further elaborate here except to generally state that statutes relating to the same general subject matter are *in pari materia* and should be construed together so as to produce a harmonious statutory scheme. Accordingly, when one statute deals with a subject in general terms and another statute, pertaining to the same subject, deals in a more detailed and specific manner, then the two should be harmonized if possible. If the two statutes present an irreconcilable conflict, however, then the more detailed statute will prevail over the less detailed statute pertaining to the same subject matter. The statutes now before us pertain to the same subject matter and therefore must be considered *in pari materia*. Ind.Code § 35–41–2–1 (Burns Supp.1984) entitled "Voluntary Conduct" states, *inter alia*, that "A person commits an offense only if he voluntarily engages in conduct in violation of the statute defining the offense." This statute deals with the subject of criminal culpability in general terms. In contrast, Chapter III of Article 41 pertains to defenses involving a lack of criminal culpability and defines situations where a person will not be deemed responsible for his acts because of a justifiable reason for committing them or because he was incapable of forming an intent. Chapter III therefore will support viable and specific defenses to the commission of otherwise criminal acts if the actor (1) is justified in using force to protect person or property [Ind.Code § 35–41–3–2 (Burns Supp.1984)]; (2) has legal authority to act [Ind.Code § 35–41–3–1 (Burns 1979)]; (3) is justified in using force to prevent the escape of a felon [Ind.Code § 35–41–3–3 (Burns Supp.1984)]; (4) is intoxicated [Ind. Code § 35–41–3–5 (Burns Supp.1984)]; (5) has a mental disease or defect [Ind.Code § 35–41–3–6 (Burns Supp.1984)]; (6) acts under mistake of fact [Ind.Code § 35–41–3–7 (Burns 1979)]; (7) was entrapped [Ind. Code § 35–41–3–9 (Burns 1979)]; (8) abandoned his effort to commit the crime and voluntarily prevented its commission [Ind. Code § 35–41–3–10 (Burns 1979)] or (8) was under duress [Ind.Code § 35–41–3–8 (Burns 1979)]. Appellant's only excuse for committing the instant crime was that he was forced to do so at gunpoint. The trial court was correct in finding that Appellant's defense was that of duress as defined in Ind.Code § 35–41–3–8, the proper law to apply in this case.

 There is no merit to Appellant's contention that the trial judge prejudiced him by ruling in his favor during opening statements before changing his position later after several witnesses had testified since Appellant had no right to a defense that was not legally available to him. Moreover, Appellant was not deprived of the import of his defense since none of the evidence he proposed to bring before the jury was excluded. Appellant's legal position therefore was not changed or prejudiced by the chronological order in which the trial court ruled. We find no reversible error in this issue.

II

 Appellant next contends that he had a right to his tendered instruction V relating to his involuntariness defense. Appellant's tendered instruction V was a recitation of Ind.Code § 35–41–2–1. We already have held in Issue I above that Appellant was not entitled to an involuntariness defense. Accordingly, he was not entitled to an instruction based on that defense.

 As to the general application of Appellant's tendered instruction V, its substance was covered by other instructions actually given. A part of the trial court's final instruction included the robbery statute, Ind.Code § 35–42–5–1, which provides that the taking of another's property must be done "knowingly or intentionally." The trial court also gave instructions defining the State's burden of proof and the fact that all elements of the described crime must be proved. The jury therefore was adequately instructed. *Richey v. State*, (1981) Ind., 426 N.E.2d 389. Moreover, any

error in the giving or refusing of this instruction was harmless since Appellant's conviction clearly was sustained by overwhelming evidence and the jury could not reasonably have found otherwise. *Battle v. State*, (1981) Ind., 415 N.E.2d 39. There was no error in the refusal of this instruction.

### III

Appellant also claims that the trial court erred by refusing his tendered instruction I on the presumption of innocence. The trial court gave the following Indiana Pattern jury instructions on this subject:

1.17—"Under the law of this State, a person charged with a crime is presumed to be innocent. To overcome the presumption of innocence, the State must prove the defendant guilty of each essential element of the crime charged, beyond a reasonable doubt. The defendant is not required to present any evidence to prove his innocence or explain anything."

1.23—"... You should attempt to fit the evidence to the presumption that the defendant is innocent and the theory that every witness is telling the truth. You should not disregard the testimony of any witness without a reason and without careful consideration. If you find conflicting testimony you must determine which of the witnesses you will believe and which of them you will disbelieve...."

The jury also was instructed in preliminary and final instructions that they were to consider all of the instructions as a whole and were not to single out any particular instruction or part thereof.

■ Appellant's tendered instruction I used the same language as that used by the trial court in its instructions except that it would have told the jury to apply the "presumption of innocence throughout the trial, step by step." Appellant claims that there was inadequate instruction on this subject since the trial court did not explicitly tell the jury that the presumption of innocence applies "step by step." The

Court of Appeals already has considered this precise question and held:

"We agree with the State that if one attempts to reconcile the evidence with the presumption of innocence, it is implicit that the presumption continues to apply. Further, the instructions directed the jury that the defendant did not have to do anything to prove his innocence. We find nothing in any of the separate instructions nor the instructions as a whole from which a juror might conclude anything other than the presumption of innocence remains with the defendant throughout the legal process."

*Vaughan v. State*, (1983) Ind.App., 446 N.E.2d 1, 4, (Judge Sullivan dissenting). We now find *Vaughan* dispositive of this issue. The jurors in this case were told that they were to consider the presumption of innocence as against every item of evidence presented and to consider the State's burden of having to prove each element of the crime charged beyond a reasonable doubt. Considering the totality of the evidence presented to the jury and the instructions given to them, we find no reversible error in the trial court's refusal to give Appellant's tendered instruction I.

### IV

■ Finally, Appellant claims that there was prosecutorial misconduct during final argument which placed him in grave peril and which required a mistrial. The following took place during the State's final argument:

[Prosecutor] Houston ... And, through luck, and I would say to you, ladies and gentlemen, through the courage of Mr. Jordan, the police were alerted, and we are sitting here today as we should be sitting here today, because this type of crime must be limited. I didn't say stopped, because I don't think you'll ever stop it. But we've got to limit it.

MR. GRAHAM [Appellant's trial counsel]: Judge, I'm going to object. This is wholly improper. He's asking

the jury to convict on (indiscernible) other than guilt.

THE COURT: The objection is sustained.

MR. GRAHAM: I think it rises to the level of—

MR. HOUSTON: I'll rephrase it, then. I'll rephrase it. Ladies and gentlemen, I was just trying to suggest to you that you have an important function to perform as jurors. You have an important responsibility.

After the trial court sustained Appellant's objection, Appellant neither requested that the jury be admonished nor moved for a mistrial. Any error by the trial court in this regard by failing to take either of these actions was therefore waived. *Williams v. State*, (1981) Ind., 426 N.E.2d 662, *reh. denied.* Notwithstanding the fact that Appellant did not request a mistrial, Appellant claims that the prosecutor's comments put him in such grave peril that the trial court was obliged as a matter of law to *sua sponte* withdraw the case from the jury and reversibly erred by failing to do so. We disagree. The prosecutor referred to evidence which presented the issues before the jury and represented fair comment on the case. The trial court in its discretion apparently interpreted the comments in this manner and sustained Appellant's objection without taking any further action. We find no reversible error in the manner in which the trial court handled this situation. *Maldonado v. State*, (1976) 265 Ind. 492, 355 N.E.2d 843.

Finding no reversible error, we affirm the trial court in all things.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.