**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**PATRICIA CARESS MCMATH**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| FRANKLIN E. LOGAN, )<br>)<br>Appellant-Defendant, )<br>)<br>vs. )<br>)<br>STATE OF INDIANA, )<br>)<br>Appellee-Plaintiff. ) | No. 24A05-1310-CR-495 |

APPEAL FROM THE FRANKLIN CIRCUIT COURT
The Honorable J. Steven Cox, Judge
Cause No. 24C01-1202-FC-180

**June 12, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, appellant-defendant Franklin E. Logan burglarized a shed belonging to his friend and neighbor, Christopher Hammond, and stole items belonging to Hammond and his cousin, Donald Gabbard. Logan appeals his conviction and sentence for Burglary,[1] a class C felony. More particularly, Logan argues that fundamental error occurred on the basis of a jury instruction, that the evidence was insufficient, and that his eight-year sentence is inappropriate in light of the nature of the offense and his character. Concluding that the trial court committed no error in instructing the jury, finding sufficient evidence, and determining that Logan's sentence is not inappropriate, we affirm the judgment of the trial court.

<u>FACTS</u>

Hammond and Gabbard, who are cousins, were raised together by their mothers on Vanatta Road in Franklin County. Logan lived down the road, and Hammond considered Logan a friend. When Hammond was fifteen years old, he built an eight-foot by twelve-foot shed on his mother's property and used it to store various tools. Hammond stated that "[t]he only access to [the shed], it's the door which I kept locked with a hasp and standard pad lock." Tr. p. 157. Because Gabbard repairs lawnmowers as a hobby, Hammond allowed him to store his lawnmower engines and parts in the shed.

At some point, the family moved from the property, but Hammond and Gabbard continued to use the shed. Hammond testified that Logan knew the contents of the shed because Logan would stop and talk to Hammond and Gabbard if they were outside

---

[1] Ind. Code § 35-43-2-1.

2

working, and the shed would always be open during these times. Hammond also testified that he had asked Logan to "keep an eye on the property" because there had been several occasions when items were missing from the shed. Id. at 176.

On December 4, 2011, Hammond noticed "that the hasp on the door had been pried on. It looked like someone had gained entry to it. Uh, I then unlocked it, and look[ed] in. There was nothing missing at that time." Id. at 164. The next day, Hammond returned to the shed and noticed that

> the hasp had been ripped off of the door, and someone had went inside of it, and I . . . at that time there was a few items missing. I really don't recall exactly what it was, it was smaller stuff, and at that point we tried to re-secure the door.

Id. at 165.

On the morning of December 6, 2011, two days after Hammond discovered that someone had gained access to the shed, Gabbard was driving to work on Old U.S. Highway 52 around 7:00 a.m. Gabbard decided to take a different route to work that day to see if anyone was trying to break into the shed. As Gabbard drove towards the shed, he noticed that the shed doors were wide open, and the shed was nearly empty. At that moment, Gabbard passed Logan, who was driving his red 1992 Chevrolet S-10 truck. Gabbard noticed that the truck appeared to have something heavy in the bed, but Gabbard continued to the shed. When Gabbard went into the shed, he observed that many items were missing:

> [T]hree riding lawnmower engines, . . . a couple push mower engines, buckets of starters to mowers, buckets of coils, carburetors, uh, some of the

3

yard tools . . . . I had a couple of tool sets in there that was gone, dry shafts
to trucks and a couple of radiators.

Tr. p. 197-98.

Gabbard noticed that the hasp on the shed had been completely broken. Gabbard remembered that Integrity Metals (Integrity), a scrap yard, was down the road and thought that Logan might be taking the stolen items to Integrity.

Because Gabbard had to go to work, he woke up Hammond and told him that "the shed had been cleaned out." Id. at 166. Gabbard also informed Hammond that he had observed Logan drive by with what appeared to be scrap metal in the bed of Logan's truck.

Indiana State Trooper Barry Bischoff responded to Hammond's call. Trooper Bischoff met Hammond at the shed and observed that the shed was empty. Hammond told Trooper Bischoff that Logan was seen leaving the area with what appeared to be scrap metal in his truck bed and that Hammond suspected that Logan had stolen the property to sell at Integrity.

Trooper Bischoff went to Integrity and asked an employee[2] if Logan had dropped off any items. The employee informed Trooper Bischoff that Logan had been in that morning. Another Integrity employee remembered Logan and told Trooper Bischoff that he could gather the items that Logan had brought in earlier that day.

---

[2] The record does not reflect the name of the employee with whom Trooper Bischoff spoke. Tr. p. 236; appellant's app. p. 20.

4

Hammond arrived at Integrity a short time later. Trooper Bischoff asked him to look at three lawnmower engines: a single-cycle Briggs engine, a twin-cylinder Briggs engine, and a single-cylinder Kohler engine. Hammond identified all three engines as the ones that were in his shed on December 5.

Hammond then called Gabbard and asked him to come to Integrity to identify the items. Gabbard later identified the same items as the items that were in his shed.

On February 12, 2012, the State charged Logan with class C felony burglary. On August 12, 2013, Logan's jury trial commenced. Prior to jury deliberations, the jury was instructed, in part that "[u]nexplained possession of stolen items shortly after a burglary supports an inference of guilt of burglary and theft of that property." Appellant's Supp. App. p. 19. Logan did not object to this instruction, and the jury found him guilty as charged.

On September 11, 2013, the trial court sentenced Logan to eight years in the Indiana Department of Correction with two years suspended to probation. Logan now appeals.

## DISCUSSION AND DECISION

### I. Jury Instruction

Logan maintains that fundamental error occurred when the trial court instructed the jury that "[u]nexplained possession of stolen items shortly after a burglary supports an inference of guilt of burglary and theft of that property." Appellant's Supp. App. p. 19. When reviewing a trial court's decision regarding a jury instruction, the appellate

court considers (1) whether the instructions correctly states the law, (2) whether the instruction is supported by the evidence in the record, and (3) whether the instruction is not covered in substance by other instructions. O'Connell v. State, 970 N.E.2d 168, 172 (Ind. Ct. App. 2012). The trial court has discretion in instructing a jury; accordingly, we will reverse only when the trial court has abused its discretion, which includes giving an instruction that misstates the law or otherwise misleads the jury. Id. When making this determination, we will consider the jury instructions as a whole and in reference to each other rather than in isolation. Id.

Where, as here, the defendant does not object to a jury instruction, he has waived the issue on appeal. Clay v. State, 766 N.E.2d 33, 36 (Ind. Ct. App. 2002). However, waiver can be avoided by showing that giving the jury instruction amounted to fundamental error, which "applies in an extremely narrow set of circumstances." Sanders v. State, 764 N.E.2d 705, 710 (Ind. Ct. App. 2002). More particularly, the error has to be so prejudicial to the rights of the defendant that he could not have received a fair trial. Id. at 710-11.

Logan directs this Court to Fortson v. State, 919 N.E.2d 1136 (Ind. 2010), in support of his argument that the trial court committed fundamental error. In Fortson, our Supreme Court addressed an anomaly identified by this Court: "'the unexplained possession of recently stolen property may be sufficient to support a conviction for theft; however if the State charges receiving stolen property, the unexplained possession of recently stolen property must be accompanied with additional circumstances supporting

6

an inference that the accused knew the property was stolen.'" Id. at 1139 (quoting Fortson v. State, No. 82A04-0801-CR-16, slip. op at 6 n.3 (August 29, 2008)). Put another way, mere possession of stolen property will support a conviction for theft, while something more is required to support a conviction for receiving stolen property.

Our Supreme Court observed that the sole unexplained possession of recently stolen property cannot substantiate a charge of receiving stolen property because "[t]he very essence of the offense is the receiving knowing [the goods] to have been stolen." Id. at 1140. If it is presumed that everyone found in possession of stolen property knows that the property was stolen, the State is relieved of its duty of establishing the required mens rea. Id.

However, as applied to a charge of theft, the Fortson Court explained that the rule was "the exclusive, unexplained possession of recently stolen property is a circumstance from which the fact-finder may draw an inference of guilt. It was a fact to consider along with all the other facts and circumstances tending to show a defendant's guilt." Id. at 1141.

The Fortson Court noted that this was the law until 1970, when our Supreme Court decided Bolton v. State, 254 Ind. 648, 261 N.E.2d 841 (1970). Id. at 1142. Affirming two defendants' convictions for theft, the Bolton Court stated that "'[t]he State had made its prima facie case before the trial court when it presented evidence of exclusive possession in the appellants shortly after the theft of the tractor.'" Id. (quoting Bolton, 261 N.E.2d at 843) (emphasis added). In other words, the State had not merely

7

introduced evidence that would have permitted the factfinder to draw an inference of guilt, but had established its case-in-chief.

The Fortson Court returned "to this jurisdiction's original moorings and as such abandon[ed] the so-called mere possession rule." Id. at 1143 (footnote omitted). Instead, possession is to be considered with the other evidence in a case rather than automatically supporting a conviction for theft. Id. Other evidence to be considered along with possession includes: how recently was the defendant found in possession of the stolen item, did the defendant possess the item right next door or many miles away, and any other relevant circumstances surrounding the possession. Id.

In this case, Logan contends that the trial court's instruction articulated the old Bolton rule, namely, that if the State has proved that the defendant was in possession of the stolen item, it has proven its prima facie case. However, as stated above, the instruction provided that the unexplained possession of stolen goods "supports an inference of guilt of burglary and theft of that property." Appellant's Supp. App. p. 19. This language is consistent with this jurisdiction's "original moorings," providing that possession of a stolen item permits the factfinder to draw an inference, or, in other words, be considered along with the other evidence. Fortson, 919 N.E.2d at 1143.

Moreover, when this instruction is considered with all the jury instructions, it is clear that the unexplained possession of stolen items was only one of many facts that the jury was instructed to consider and find to convict Logan. See Appellant's Supp. App. p. 18, 22, 31; see also id. at 25 (instructing that "[a]ll of the law of this case has not been

8

embodied in any one instruction. Therefore, in construing any single instruction you should consider it with all other instructions given"). Under these facts and circumstances, the trial court did not err. Consequently, Logan has not shown fundamental error.

## II. Sufficiency of the Evidence

Logan argues that there is insufficient evidence to sustain his conviction for class C felony burglary. When reviewing a challenge to the sufficiency of the evidence, this Court neither reweighs the evidence nor judges the credibility of witnesses. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). Instead, we consider the evidence most favorable to the trial court's ruling and must affirm the conviction unless no reasonable factfinder could find the elements proven beyond a reasonable doubt. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007).

To convict Logan of class C felony burglary, the State was required to prove beyond a reasonable doubt that on or about December 6, 2011, Logan knowingly or intentionally did break and enter the building or structure of Chris Hammond with the intent to commit theft. Ind. Code § 35-43-2-1; Appellant's App. p. 17.

At trial, Hammond stated that, "[t]he only access to [the shed], it's the door which I kept locked with a hasp and standard pad lock." Tr. p. 157. Gabbard, who stored some of his lawnmower engines and other parts in the shed, was the only other person who had access to the shed. Id. at 159-60.

9

Hammond and Gabbard testified that Logan knew what was in the shed because Logan would stop and talk to them if Logan was driving by and saw them working. Id. at 174-75; 203. According to Hammond, the doors to the shed were open when they were working, and anyone driving by or on the property could see what was inside the shed. Id. at 175.

Hammond also testified that over the past few years, items would be missing from the shed. Id. Because Hammond considered Logan a friend, he asked Logan to "keep an eye on the property." Id.

Gabbard testified that on the morning of December 6, 2011, he drove to work using a different route to see if anyone was trying to break into the shed because it had been broken into the previous night. Id. at 195. As Gabbard drove towards the shed, he noticed that the shed doors were wide open, and it was nearly empty. Id. at 196. Before reaching the shed, Gabbard passed a red 1992 Chevrolet S-10 truck that he recognized as belonging to Logan. Id. Gabbard stated that, "[i]t looked like it was loaded down [with] something heavy in it. . . . [b]ecause the back fenders [were] close to the tires." Id. at 197.

When Gabbard reached the shed, he found that most of the items in the shed were missing, including: three riding lawnmower engines, a couple of push mower engines, buckets of mower starters, buckets of coils, carburetors, yard tools, several tool sets, dry shafts, and a couple of radiators. Id. at 197-98. Additionally, the lock had been broken off. Id. at 198.

Trooper Bischoff was dispatched to the shed where he met Hammond, and after observing that the shed was nearly empty, he went to Integrity. Id. at 234-35. Integrity employees remembered the load that Logan had brought in just a few hours before and brought it from the scrap yard to be inspected. Id. at 238-39. Hammond and Gabbard identified the property as belonging to them. Id. at 240. Contrary to Logan's assertion, we cannot say that this evidence is insufficient to sustain his conviction for class C felony burglary.

### III. Inappropriate Sentence

Logan argues that his eight-year maximum sentence is inappropriate in light of the nature of the offense and his character. This Court will revise a sentence authorized by statute only "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B).

The question is not whether another sentence is more appropriate, but whether Logan's sentence is inappropriate. King v. State, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). The defendant has the burden of proving that his sentence is inappropriate in light of the nature of the offense and his character. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. Ct. App. 2006),

Logan was convicted of a class C felony. The sentencing range for a class C felony is between two years and eight years, with an advisory sentence of four years. Ind. Code § 35-50-2-6.

As for the nature of the offense, Logan was a close friend of Hammond, one of the victims in this case. Tr. p. 173. Indeed, Hammond trusted Logan to "keep an eye on the property," after items had been stolen. Id. at 175. Logan took advantage of the position that he gained from that trust. Thus, the nature of the offense avails Logan of nothing.

As for Logan's character, as with the nature of the offense, Logan's willingness to take advantage of a friend does not reflect well on his character. Additionally, Logan has an extensive criminal history, including three felony and five misdemeanor convictions. Appellant's App. p. 88-90. Two of Logan's felony convictions are for receiving stolen property, an offense clearly related to the offense in this case. Id. at 89-90. Perhaps even more compelling, one of those convictions was based on acts committed after the present offense. Id. at 90. And even though Logan has responded well to probation in the past, his continuous disregard for the law makes these sentencing alternatives unworkable in isolation. Id. at 88-90. Therefore, Logan's eight-year sentence is not inappropriate in light of the nature of the offense and his character.

The judgment of the trial court is affirmed.

BARNES, J., and CRONE, J., concur.