## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 02 2020, 10:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Angelo Velez,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 2, 2020

Court of Appeals Case No.
19A-CR-2467

Appeal from the Marion Superior Court

The Honorable Kurt M. Eisgruber, Judge

The Honorable Amy J. Barbar, Magistrate

Trial Court Cause Nos.
49G01-1602-F3-7337
49G01-1805-PC-15736

**Bailey, Judge.**

# Case Summary

Angelo Velez ("Velez") appeals his convictions for Attempted Robbery, as a Level 3 felony,[1] two counts of Burglary, as Level 4 felonies,[2] and two counts of Theft, as Class A misdemeanors.[3] We affirm.

# Issues

Velez presents two issues for review:

I.    Whether the jury was erroneously instructed as to the State's burden of proof; and

II.   Whether sufficient evidence supports one of the convictions for Burglary.

# Facts and Procedural History

During the morning of December 17, 2015, Indianapolis resident Tim McDowell ("McDowell") heard his dog barking and looked out the window of his residence on Vine Street to investigate. McDowell saw three men dressed in black run across a yard, run down the alley behind McDowell's residence, and then run back across the yard. The men were carrying a television, a bag, and a

---

[1] Ind. Code §§ 35-42-5-1(1), 35-41-5-1.

[2] I.C. § 35-43-2-1.

[3] I.C. § 35-43-4-2(a).

keyboard case. A fourth man joined with the first three, and McDowell saw them drive away in a white SUV with dark tinted windows.

[4] McDowell's father called 9-1-1, and Indianapolis Metropolitan Police Officer Steven Spina ("Officer Spina") responded to the dispatch at 8:57 a.m. Meanwhile, Nicholas Szalai ("Szalai") had been on his way to work when he received notice that his residential security alarm had been activated. Szalai immediately returned home to find that his window had been broken and a television and computer monitor were missing. Szalai provided Officer Spina with a thirty-second security video recorded inside the residence, from which two still photos were produced.

[5] Less than one mile away, on Crestwood Drive, Ranmundo Rangel ("Rangel") heard a knock at his door. When Rangel approached the door, he saw that it was cracked open. Five men entered the house. One man struck Rangel in the face, and one demanded to know "where's the money, where's the drugs." (Trans. Exhibit Vol. II, pg. 91.) Rangel's tenant, Debar Lindsey ("Lindsey"), was inside a bedroom when she heard the disturbance. She took refuge in a closet and called 9-1-1. Within minutes, Lindsey was dragged from the closet by one of the men, who renewed the demand for money and drugs. Lindsey saw that one of the men was holding a knife that looked like one she had ordered from an infomercial. One of the men struck Lindsey in the back of her head, knocking her down.

[6] Some of the men began to whistle, an apparent signal to leave, giving Rangel the opportunity to flee the residence. Rangel ran and hid in his neighbor's bushes; he saw the group of men leaving his residence and drive away in a white or tan vehicle he called a van.[4] Rangel's neighbor, Gose Garsia ("Garsia") saw a group of men drive off in a white Chevy Envoy. Garsia estimated that police arrived three to five minutes later. Officer Jeffrey Stagg ("Officer Stagg") responded to a dispatch at 9:10 a.m. When he arrived at the Rangel residence, Officer Stagg saw a large television set abandoned at the curb. He also recovered a discarded knife like Lindsey's knife.

[7] Rangel identified Velez from a photographic array. Five fingerprints, later identified as those of Velez, were lifted from the television abandoned at Rangel's curb. Lindsey was unable to identify any of her attackers.

[8] Velez was charged with attempted robbery causing bodily injury to Rangel, attempted armed robbery and kidnapping of Lindsey, theft of Rangel's property, theft of Szalai's property, burglary of Rangel's residence, and burglary of Szalai's residence. Velez was tried before a jury on March 26 and 27, 2018. The jury acquitted Velez of kidnapping and was unable to reach a verdict as to attempted robbery of Lindsey. Velez was found guilty of the remaining charges.

---

[4] Rangel was speaking through an interpreter.

[9] On April 20, 2018, Velez received an aggregate sentence of ten years imprisonment. This consisted of six years for attempted robbery of Rangel, a concurrent six-year sentence for burglary of Rangel's residence, two concurrent one-year sentences for theft, and a consecutive four-year sentence for burglary of Szalai's residence.

[10] Court-appointed counsel filed a Notice of Appeal on behalf of Velez. However, on May 14, 2018, Velez filed a pro-se petition for post-conviction relief. Upon the motion of counsel, the appeal was dismissed without prejudice, to permit remand for resolution of the post-conviction proceedings.[5] Velez was denied post-conviction relief and his direct appeal proceeded.

# Discussion and Decision

## Jury Instruction

[11] Prior to the presentation of evidence, the trial court conducted a bench conference to discuss jury instructions, at which the court signaled its intention to utilize Indiana Pattern Jury Instruction 1.07 on the State's burden of proof. The proposed language as to each count was:

> [Definition of Offense] Before you may convict the defendant of [offense] the State must prove each of the following elements beyond a reasonable doubt:

---

[5] *See* Indiana Appellate Rule 37.

[elements]

> If the State fails to prove each of these elements beyond a
> reasonable doubt you must find the defendant not guilty of the
> crime of [offense] as charged in Count [#].

App. Vol. III, pgs. 12-20.

[12] Velez objected to the proposed instruction and asked that the trial court follow a federal pattern instruction on burden of proof, such that the word "any" would be substituted for "each" in the last sentence. Velez argued that the jury could have understood the final sentence of the Indiana pattern instruction to mean that acquittal was proper only if the State had failed to prove each, as in each and every, element. The trial court responded that the federal instruction's use of "any" was "more accurate," but stated, "each leads me to the same conclusion." (Trans. Exhibits Vol. II, pgs. 13-14.) The trial court decided to "defer to the [Indiana] pattern." *Id.* at 14.

[13] Velez now argues that the jury was incorrectly instructed on the State's burden of proof. The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury, and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Batchelor v. State*, 119 N.E.3d 550, 560 (Ind. 2019). The "preferred practice is to use the pattern jury instruction," but pattern instructions are not always upheld as correct statements of law. *Gravens v. State*, 836 N.E.2d 490, 493 (Ind. Ct. App. 2005).

[14] To give "concrete substance for the presumption of innocence," due process requires the State to persuade the factfinder "beyond a reasonable doubt of every fact necessary to constitute the crime charged." *In re Winship*, 397 U.S. 358, 363, 90 S. Ct. 1068 (1970). Accordingly, the jury must be instructed in a manner that does not relieve the State of its burden of proof. *See Batchelor*, 119 N.E.3d at 560. In general, a trial court has discretion in instructing the jury; however, when a question of law is presented, our review is de novo. *Id.* at 554. We reverse the trial court only if the instruction resulted in prejudice to the defendant's "substantial rights." *Hernandez v. State*, 45 N.E.3d 373, 376 (Ind. 2015).

[15] Here, the challenged instruction first tells the jury that the State must prove beyond a reasonable doubt each element of the charged offense. The final sentence again uses the word "each" but in a different context, that is, the jury is instructed when acquittal is mandatory. The word "any" may well be a preferable substitution, dispelling any possible doubt. The jury would be instructed, in explicit terms, that a failure of proof on any element mandates acquittal.

[16] Although we acknowledge that the burden of proof instructions given in this case may well have been more artfully worded, it is well-settled that jury instructions are to be considered as a whole, not in isolation. *O'Connell v. State*, 970 N.E.2d 168, 172 (Ind. Ct. App. 2012). We look to whether the instructions, taken as a whole, misstate the law or otherwise mislead the jury." *Id.* Thus, our focus is not limited to the repetition of one word.

[17] The Velez jury was instructed to consider the instructions as a whole. Among the instructions was Preliminary Instruction 6, regarding the presumption of innocence. The jury was instructed that, to overcome this presumption, "the State must prove the defendant guilty of each element of the crime charged beyond a reasonable doubt." (App. Vol. III, pg. 11.) The jury was also instructed, relative to every specific crime alleged, that the State must prove each element (thereinafter enumerated) beyond a reasonable doubt. Finally, in a preliminary instruction directed to explaining the concept of reasonable doubt, the jury was instructed that the State must prove each and every element by evidence that "leaves no reasonable doubt." *Id.* at 27. In sum, we are not persuaded that the jury was misled or that Velez suffered prejudice to his substantial rights.

## Sufficiency of the Evidence – Szalai Burglary

[18] To convict Velez of the Szalai burglary, as charged, the State was required to prove beyond a reasonable doubt that Velez broke and entered Szalai's residence with the intent to commit theft inside the residence. Ind. Code § 35-43-2-1. Velez concedes that Szalai's residence was burglarized, but he claims that the State failed to establish his identity as one of the perpetrators.

[19] When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from

such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

[20] Victim testimony and fingerprint evidence tied Velez to the Rangel burglary, unlike the Szalai burglary. Velez insists that Szalai's thirty-second security video lacks any probative value. But this argument ignores Detective Scott Stauffer's testimony that he produced still photographs from the video. At trial, Velez was instructed to remove his glasses and the jury was provided with the still photographs, State's Exhibits 20 and 21, for comparison. Although Velez requested that the photographs be used only as a demonstrative exhibit, the trial court clarified that they were being admitted as substantive evidence. Velez asks that we discard this evidence, but we do not reweigh evidence or assess credibility of witnesses. *Gray v. State*, 903 N.E.2d 940, 943 (Ind. 2009).

[21] Velez also argues that the jury was invited to draw unreasonable inferences. According to Velez, the State asked the jury "to infer that he was in two places at the same time." Appellant's Brief at 35. Velez observes that the police dispatches were very close in time, 8:57 a.m. at Vine Street and 9:10 at Crestwood Drive. Velez also point to Garsia's testimony that he put his child on a bus at 8:45 a.m. and saw a white vehicle parked in front of Rangel's residence. To the extent that testimony about a vehicle's location may be said to create a conflict about a person's location, it is the role of the fact-finder to determine whom to believe and what portion of conflicting evidence to believe. *Perry v. State*, 78 N.E.3d 1, 8 (Ind. Ct. App. 2017). The State did not fail to

present sufficient evidence from which the jury could identify Velez as one of the burglars of the Szalai residence.

# Conclusion

[22] Velez is not entitled to reversal on the basis of instructional error. Sufficient evidence supports Velez's conviction for burglary of the Szalai residence.

[23] Affirmed.

Crone, J., and Altice, J., concur.