**In the Matter of J.P., Appellant–Respondent,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–0110–JV–432.**

Court of Appeals of Indiana.

June 7, 2002.

Jan B. Berg, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent, J.P., a juvenile, appeals the juvenile court's determination that he violated his probation.

We affirm.

### ISSUE

J.P. raises two (2) issues on appeal, which we consolidate and restate as follows: whether there was sufficient evidence to support the juvenile court's determination that he violated his probation.

### FACTS AND PROCEDURAL HISTORY

On March 19, 2001, the juvenile court issued a Dispositional Order, finding J.P. to be a delinquent child. The Order provided, in pertinent part, as follows:

> The Court awards Wardship to the Indiana Department of Correction for housing in any correctional facility for children. Said Commitment is suspended and the Respondent is placed on probation, with special conditions: complete 30 hours of community service work; participate in counseling, set up by parents; enroll in an educational program, successfully complete[.]

(Appellant's App. p. 10). Additionally, J.P. was ordered to "report to the probation officer at such times and places as directed." (Appellant's App. p. 40). On September 6, 2001, the State filed an information against J.P., alleging that he failed to: "1. participate in counseling, set up by parents. 2. enroll in an educational program. 3. report to the probation officer at such times and places as directed." (Appellant's App. p. 44).

On September 18, 2001, a denial hearing was held. At the hearing, J.P.'s probation officer, Dolene Van Winkle (Van Winkle), testified that as of September 6, 2001, J.P. had not enrolled in an educational program. However, Van Winkle testified that on September 7, 2001, J.P. gave her verification of his enrollment in the CAMP Program, "which is an educational program." (Tr. p. 14). When asked, "[h]ad you informed [J.P.] prior to September 7, 2001 that you would be filing a violation," Van Winkle stated, "[n]o, because they did not arrive for the office appointment." (Tr. p. 15).

Additionally, Van Winkle testified that she attempted to schedule meetings with J.P. prior to September 6, 2001; however, she stated that she had not spoken to J.P. for at least one (1) month before filing the probation violation. On cross examination, Van Winkle was questioned about a review summary that she prepared. The following exchange took place between J.P.'s counsel and Van Winkle:

Q Can you find any place on there that indicates that you attempted to have any contact with [J.P.] as opposed to having contact with his mother[?]

A Yes. Phone contacts I attempted.

Q You attempted to call his mother, correct?

A Where [J.P.] resides, yes.

Q Right. So you attempted to call his mother not [J.P.], correct?

A No. When I left messages I would say could someone please call me back.

Q Now let's look at it. On 6/11/01, P.O. Van Winkle left a message for mother, correct?

A Mm, mm.

Q 6/11/01 left another one. P.O. Van Winkle spoke with mother via telephone, correct?

A Correct.

Q 6/21/01 P.O. Davis spoke with mother via telephone, correct?

A Mm, mm.

Q 6/25/01 P.O. Van Winkle left a message for youth?

A Yes.

Q But we don't know if he ever got it[,] do we?

A Do I know that he got it?

Q Correct.

A No.

Q 6/26/01 P.O. Van Winkle spoke with mother via telephone, correct?

A Correct.

Q 8/7/01 P.O. Van Winkle left a message for mother, correct?

A Right.

Q 8/28/01 P.O. Van Winkle made an appointment with her.

A Correct.

Q Who was that addressed to?

A Addressed to mother and it had [J.P.'s] name on it also.

Q But it's addressed to mother. It's her mail, correct?

A The address on the envelope. Yes.

Q 9/5/01 P.O. Van Winkle had a no show for office appointment, is that right?

A Correct.

Q But at this point we don't know if [J.P.] even knew about that appointment, do we?

A Do I know?

Q Right.

A Right.

Q You don't?

A I do not.

Q And then 9/6/01 P.O. Van Winkle left a message for mother?

A Correct.

Q And then finally, 9/6/01 P.O. Van Winkle had an office appointment with youth and mother?

A Correct.

Q They showed up that day?

A Yes they did.

Q So now you'd agree that all of those contacts, of only one of them, even suggest that it was intended to be a contact between probation officer and [J.P.], correct?

A Correct.

Q And we can't tell from any of those whether or not mother[,] if she got the word[,] if she ever communicated anything to [J.P.], can we?

A I'm not aware.

Q So we don't know if [J.P.] has any fault whatsoever in not reporting to you at such times and places as directed. He wasn't directed[,] mother was, correct?

A [J.P.] knows the rules of probation.

(Tr. p. 18–20).

At the conclusion of the denial hearing, the juvenile court held that the State did not meet its burden of proof on the first allegation, failure to participate in counseling set up by the parents. However, the juvenile court entered a true finding on the second and third allegations, failure to enroll in an educational program and failure to report to his probation officer. On October 1, 2001, the juvenile court entered its Disposition on Violation of: Probation/Suspended Commitment and ordered as follows:

> The Court awards Wardship to the Indiana Department of Correction for housing in any correctional facility for children. Said Commitment is suspended and the Respondent is placed on probation, with special conditions: Successfully complete intensive probation program and pay fees; Random urine screens; CAMP Program; Write essay on the educational program within two weeks and provide proof to probation; Court waives all prior court orders due to intensive probation program and new court orders.

(Appellant's App. p. 56).

J.P. now appeals.

### DISCUSSION AND DECISION

 J.P. argues that there was insufficient evidence to support the juvenile court's determination that he violated his probation. To establish that a juvenile has violated his probation, the State need only prove an alleged violation by a preponderance of the evidence. *C.S. v. State,* 735 N.E.2d 273, 276 (Ind.Ct.App.2000), *trans. denied.* Furthermore, we will affirm the decision of the juvenile court if there is substantial evidence of probative value to support the conclusion that the juvenile violated any condition of his probation. *Id.*

### *Failure to Enroll in an Educational Program*

 J.P. argues, and we agree, that the juvenile court erred in finding that he failed to enroll in an educational program. The record does not reveal that there was a certain time by which J.P. was required to enroll in an educational program. The juvenile court's March 19, 2001 Dispositional Order simply states that J.P. must enroll in an educational program and successfully complete it.

Granted, there are reasonable time considerations involved here. However, there is no indication that J.P. was aware that September 6, 2001 was the deadline. Furthermore, as stated above, J.P. enrolled in the CAMP Program, "which is an educational program." (Tr. p. 14). J.P. gave Van Winkle verification of his enrollment

in the CAMP Program on September 7, 2001. It is not apparent that J.P. gave Van Winkle the verification because he knew that she filed a probation violation. In fact, Van Winkle acknowledged that she did not inform J.P. prior to September 7, 2001 that she intended to file a probation violation. Consequently, we cannot find that there is substantial evidence of probative value to support the juvenile court's conclusion that J.P. failed to enroll in an educational program. *See C.S.*, 735 N.E.2d at 276.

*Failure to Report to Probation Officer*

 J.P. argues that the juvenile court erred in finding that he failed to report to his probation officer. J.P. maintains that Van Winkle consistently attempted to contact him through his mother. With this in mind, J.P. insists that he did not receive the messages or know of the attempted contact. While it is true that Van Winkle left phone messages for J.P.'s mother, spoke with his mother, and sent a letter addressed to his mother, Van Winkle also left one (1) phone message for J.P. Additionally, the letter addressed to J.P.'s mother also had J.P.'s name on it. Thus, we find that Van Winkle attempted to contact J.P. directly.

Moreover, Van Winkle testified that prior to September 6, 2001, she had not spoken to J.P. for approximately one (1) month. When asked, "when these children are on suspended commitment about how frequently are they suppose to have meetings with their probation officers," Van Winkle stated, "[a]t least once a month and then phone contacts." (Tr. p. 15). Accordingly, we find that there is substantial evidence of probative value to support the juvenile court's conclusion that J.P. failed to report to his probation officer. *See C.S.*, 735 N.E.2d at 276.

*CONCLUSION*

Based on the foregoing, we conclude that the juvenile court did not err in its determination that J.P. violated his probation, as J.P. failed to report to his probation officer. Granted, it is our holding that the juvenile court erred in finding that J.P. failed to enroll in an educational program. However, proof of any probation violation is sufficient to modify or even revoke a juvenile's probation. *See id.*

Affirmed.

MATTINGLY–MAY, J., and VAIDIK, J., concur.