## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 17 2019, 8:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

J.R.,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

January 17, 2019

Court of Appeals Case No.
18A-JV-1325

Appeal from the Miami Superior
Court

The Honorable Daniel C. Banina,
Judge

Trial Court Cause No.
52D02-1801-JD-1
52D02-1707-JD-23

**Pyle, Judge.**

# Statement of the Case

[1]     J.R., a juvenile, appeals an adjudication finding him to be a delinquent child for having committed an act, that if committed by an adult, would constitute Class A misdemeanor battery[1] and the modification of his placement from a prior dispositional order for various rules violations. Specifically, J.R. challenges the sufficiency of the evidence establishing the voluntariness of his actions underlying the adjudication as a delinquent and the modification of his prior disposition. Concluding that there is sufficient evidence to support the adjudication and modification, we affirm the juvenile court.

[2]     We affirm.

# Issue

Whether the evidence is sufficient to support the juvenile court's adjudication of J.R. as a delinquent and its modification of his prior disposition.

# Facts

[3]     On August 23, 2017, fourteen-year-old J.R. was adjudicated a delinquent child under cause number 52D02-1707-JD-23 ("JD-23") for an act that if committed by an adult, would have constituted Class A misdemeanor criminal mischief. J.R. was placed on probation and ordered to receive residential services at the

---

[1] IND. CODE § 35-42-2-1.

Youth Opportunity Center ("YOC"). On January 16, 2018, the State sought to modify the dispositional decree for JD-23. The first verified petition for modification alleged that J.R. had violated probation by "fail[ing] to comply with rules and regulations at Youth Opportunity Center resulting in him being unsuccessfully discharged from the program." (App. Vol. 3 at 69). The State filed an amended verified petition for modification on January 24, 2018. This amended petition included the allegation from the original modification but further alleged that J.R. had violated probation by: (1) committing the act of battery on or about January 5, 2018; (2) committing the act of battery on or about January 22, 2018; (3) committing the act of attempted battery and battery by bodily waste on or about January 23, 2018; and (4) failing to comply with rules and regulations at the Robert J. Kinsey Youth Center ("Kinsey"), resulting in him being removed from said facility. The State also filed a new delinquency petition under cause number 52D02-1801-JD-1 ("JD-1"), alleging that J.R. had committed an act that, if committed by an adult, would constitute Class A misdemeanor battery on January 5, 2018.

[4] On April 23, 2018, the juvenile court held a fact-finding hearing for the modification and new delinquency petition. Cherisse Thompson ("Thompson") and Tracey Derrick ("Derrick"), staff from Kinsey, testified about the attempted battery and battery by bodily waste that had occurred on January 23rd. Thompson explained that a teacher requested the removal of a student from a classroom for "acting up and not listening." (Tr. 47). When Thompson entered the classroom, she encountered J.R. sitting in a chair. After

ten minutes of talking to J.R. to "deescalate him, to reason with him, to just quietly leave the classroom and go back to his cell, uh, he still was refusing to, so Tracey Derrick gave a non-verbal queue to remove him from the chair." (Tr. 47). Thompson and "several male staff members removed [J.R.] from the chair and at that point he got up and walked towards another door." (Tr. 47). J.R. then sat down in a different chair. Thompson, Derrick, and other staff members removed J.R. from the chair and he was "gently taken to the ground." (Tr. 47). While he was on the ground, Thompson observed and removed a pencil hidden in J.R.'s sleeve. As they stood J.R. up to take him to the "isolation cell," J.R. "tried to bite a male staff member and proceeded to spit on [Thompson's] right arm and [her] torso area." (Tr. 48). Thereafter, J.R. was carried and placed in the isolation area.

[5]     Miranda Litzelswope ("Litzelswope"), the listed victim in JD-1 and staff member at YOC, testified regarding the events that had occurred at YOC on January 5th. She explained that YOC was having issues with juveniles covering surveillance cameras. The juveniles would form a human pyramid and place clothing or other material on the cameras to prevent facility staff from observing their behavior. Litzelswope testified that J.R. "was the top of the pyramid trying to cover the camera." (Tr. 69). As a result, the juveniles were ordered to their cells. Thereafter, J.R. blocked the view into his cell room by placing a mattress in front of the cell door window. This was a violation of YOC rules and prompted facility personnel to remove the mattress to make sure J.R. was safe. The staff opened J.R.'s door and began to pull the mattress out.

Litzelswope testified that when they did this, J.R. "threw a punch 'ish' slap maybe, uh, and that [is] where I had received the cut on my eye." (Tr. 59). On cross-examination Litzelswope was asked "wouldn't it be fair to say that [J.R.] was flailing without the intent to really even hit anyone in particular." (Tr. 65). Litzelswope responded, "[n]o. He hit me and he stopped flailing." (Tr. 65). She later testified that because YOC staff were using physical force to remove the mattress, she believed J.R. "went into fight or flight mode." (Tr. 67). Kaley Hesher ("Hesher") and Ramon Batts ("Batts"), also staff members at YOC, testified that they had observed J.R. hit Litzelswope. Hesher testified that when J.R. came out of his cell, "he started swinging at staff[,]" striking Litzelswope. (Tr. 73). Batts testified that "[J.R.] was basically eye to eye with [Litzelswope] at that point and it, it went from a pushing on the mattress to a closed fist swinging at her[.]" (Tr. 78).

[6] J.R. also testified at the fact-finding hearing. He admitted to refusing to follow an order to leave the classroom at Kinsey, violating YOC rules by using a mattress to cover his cell window, and pushing staff members at YOC. Concerning the battery on Litzelswope, J.R. stated, "then they said that I hit someone and I said no I didn't, I didn't hit him, I didn't hit him, and then, uh, they said no you hit her and I said no didn't hit her, I didn't hit her[.]" (Tr. 89).

[7] After the fact-finding hearing, the juvenile court adjudicated J.R. a delinquent child for battery under JD-1 and also found that the State had met its burden for

modification of his disposition under JD-23.[2]  The juvenile court then ordered

J.R. into the custody of the Indiana Department of Correction ("DOC"),

Juvenile Division.  J.R. now appeals.

# Decision

[8]  On appeal, J.R. challenges the sufficiency of the evidence with respect to the adjudication for battery in JD-1 and the evidence used to support the modification of his disposition in JD-23.  Because J.R. challenges the sufficiency of evidence for both the battery adjudication under JD-1 and the battery and attempted battery for the modification of his disposition under JD-23, we will address each cause number in turn.

## 1.  Adjudication for Battery in JD-1

[9]  When the State seeks to have a juvenile adjudicated a delinquent for committing an act that would be a crime if committed by an adult, the State must prove every element of that crime beyond a reasonable doubt.  *Z.A. v. State*, 13 N.E.3d 438, 439 (Ind. Ct. App. 2014).  When reviewing the sufficiency of the evidence supporting a juvenile adjudication, we neither reweigh the evidence nor judge the credibility of the witnesses.  *Id*.

---

[2] During closing arguments, the State conceded that it did not present evidence regarding the January 22nd battery mentioned in the amended verified modification.  Accordingly, the juvenile court did not find that this allegation was proven by a preponderance of evidence.

To sustain the true finding that J.R. committed an act that would constitute Class A misdemeanor battery, the State had to prove beyond a reasonable doubt that J.R. knowingly or intentionally touched another person, Litzelswope, in a rude, insolent, or angry manner that resulted in bodily injury. *See* IND. CODE § 35-42-2-1(c)(1), (d)(1). J.R. argues that the "evidence in the record called into question the voluntariness of [his] aggressive responses, and therefore the State bore the burden of proving his voluntariness beyond a reasonable doubt for the purpose of the new offense, and by a preponderance of the evidence for the modification." (J.R.'s Br. 18). For this argument, J.R. relies on Litzelswope's brief testimony regarding his "fight or flight" response to physical force. (Tr. 67). "Once evidence in the record raises the issue of voluntariness, the State must prove beyond a reasonable doubt that the defendant acted voluntarily." *O'Connell v. State*, 970 N.E.2d 168, 172 (Ind. Ct. App. 2012). If the State fails to prove that a defendant's conduct was voluntary, it has not proved every element of the offense. *Id.* INDIANA CODE § 35-41-2-1(a) provides that "[a] person commits an offense only if he voluntarily engages in conduct in violation of the statute defining the offense."

Our review of the record reveals that Litzelswope and other YOC staff attempted to remove a mattress blocking the window on J.R.'s door. During the struggle to remove the mattress, J.R. hit Litzelswope in the face leaving a visible abrasion near her eye. Three YOC staff members observed J.R. strike Litzelswope and testified to the same. Further, J.R.'s complete denial at the fact-finding hearing that he hit Litzelswope is at odds with his argument on

appeal. At the fact-finding hearing, J.R. denied that the battery had occurred at all. He now argues that he hit Litzelswope but that his actions were not voluntary. The Juvenile court was in the best position to make a credibility determination; we hold that the testimony presented at the fact-finding hearing was sufficient to establish the voluntariness of J.R.'s actions. "The term voluntary is used in [I.C. § 35-41-2-1(a)] as meaning behavior that is produced by an act of choice and is capable of being controlled by a human being who is in conscious state of mind." *O'Connell*, 970 N.E.2d at 172. There is no evidence in the record that J.R. suffered from a condition excluding his behavior from voluntary conduct. J.R. cannot now rely upon the lack of such evidence as proof that his actions were involuntary. As such, the evidence sufficiently supports the finding that J.R. acted voluntarily and committed battery.

## 2. Modification of Disposition in JD-23

[12] Next, J.R. challenges the sufficiency of the evidence underlying the modification of his disposition from probation to DOC. We observe that a probation revocation hearing is in the nature of a civil proceeding and the decision to revoke is a matter within the sound discretion of the trial court. *C.S. v. State*, 735 N.E.2d 273, 276 (Ind. Ct. App. 2000), *trans. denied*. To establish that a juvenile has violated his probation, the State need only prove an alleged violation by a preponderance of the evidence. *J.P. v. State*, 770 N.E.2d 365, 369 (Ind. Ct. App. 2002), *trans. denied*. Furthermore, we will affirm the decision of

the juvenile court if there is substantial evidence of probative value to support the conclusion that the juvenile violated any condition of his probation. *Id.*

[13] Here, the record establishes that, while at Kinsey, J.R. refused orders to leave a classroom, spat on a staff member, attempted to bite several staff members, and had a pencil in his sleeve, all rule violations. Further, J.R. attempted to cover the cameras at YOC, another rule violation. J.R. also testified and admitted to refusing to follow an order to leave the classroom, pushing staff members when they attempted to keep him in his room at YOC, and violating YOC rules by placing a mattress in his door window. We need not address J.R.'s insufficiency of voluntariness evidence argument under JD-23 because as we have long held, proof of "any probation violation" is sufficient to modify or revoke a juvenile's probation. *J.P.*, 770 N.E.2d at 369. As explained above, J.R. committed several probation violations. J.R.'s argument to the contrary essentially invites us to reweigh the evidence. We decline this invitation. *See Z.A.* 13 N.E.3d 439. Because there was substantial evidence of probative value to support the juvenile court's determination that J.R. had violated his probation, we affirm the juvenile court's modification of his disposition.

[14] Affirmed.

Najam, J., and Crone, J., concur.